STATE OF TENNESSEE *v.* PAUL LEGORA.

(*Nashville,* December Term, 1930.)

Opinion filed February 7, 1931.

NAT TIPTON, Assistant Attorney-General, for plaintiff in error.

C. L. CUMMINGS, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

124

The State has appealed from a judgment of the Circuit Court of Rutherford County quashing an indictment. The second and third of the three counts of the indictment were quashed because defective, in that essential averments of fact were omitted. The first count was quashed upon the finding by the court that the supporting statute is unconstitutional. The statute is chapter 182 of the Acts of 1903, regulating the business of junk dealers.

The action of the trial court on the second and third counts of the indictment is clearly correct and must be affirmed. These counts undertake to charge offenses defined in the second and fourth sections of the cited statute, and fail to accuse the defendant of doing acts necessary to constitute the offense charged.

The first count charges the defendant with carrying on the business of a junk dealer, and with a particular purchase of junk copper or brass, without keeping a book record of his purchases, in violation of section 1 of the statute which required that such dealers "shall keep a book in which they shall promptly enter the names of all persons from whom they buy or get scrap iron, brass or other metals of any sort, . . . said entries to be made in chronological order from day to day, as the business is transacted, and said book shall at all times be open to inspection of the police or other officer, or any person who may desire to see the same; and shall be in good faith kept and preserved by such dealers for the convenient inspection aforesaid." Acts 1903, chapter 182, section 1.

This provision was held by the trial court to be in conflict with the Constitution of the United States, Amendments four and five, and in conflict with the Constitution of Tennessee, article one, section seven, "relating to

unreasonable searches and seizures and giving evidence against one's self.''

The fourth and fifth Amendments to the Constitution of the United States do not control the legislative action of states, and have no application to the case before us. *Smith* v. *Tate,* 143 Tenn., 268, 274; *Raine* v. *State,* 143 Tenn., 168, 176.

The statute in question has been in force more than twenty-five years. That it has not operated to oppress those engaged in the regulated business is indicated by the fact that no case involving its application has heretofore been presented to this court, so far as the reported cases show. A similar requirement is made of pawnbrokers, by the Act of 1879, chapter 100. (Shannon's Code, 1917 Ed., sections 3608a105, 3608a106.) This statute has also been immune from attack during the fifty years it has been enforced.

In other jurisdictions, the business of junk dealers has been repeatedly held subject to this special regulation. The Supreme Court of the United States refers ''to the well-known fact . . . that junk dealers provide an important market for stolen merchandise of the kinds mentioned, and that because of their experience they are peculiarly fitted to detect whether property offered is stolen property.'' *Rosenthal* v. *New York,* 226 U. S., 260, 57 L. Ed., 212, 217. Sustaining a statute containing similar provisions, the Supreme Court of Ohio, in *Phillips* v. *State,* 77 Ohio State, 214, 217, said:

''The business of dealing in second-hand articles and junk is one which is peculiarly liable to abuse; and, whether honestly conducted or not, experience has shown that stolen or lost property frequently finds its way to the junk dealer, through the agency of the persons who

have unlawfully appropriated it. In view of the fact that it frequently happens that individuals seeking to reclaim their property are suddenly stopped and forever baffled at the door of the junk dealer's shop, the requirements complained of here seem to us to be very fair and moderate."

■ The course of this regulatory legislation is sufficiently indicated by reference to the note in 30 American Law Reports, page 1427, et seq. The requirement that junk dealers make and preserve a record of purchases for inspection by police and other interested persons is expressly considered and sustained as reasonable in *Ullman* v. *District of Columbia,* 21 App. (D. C.), 241; *Grossman* v. *Indianapolis,* 173 Ind., 157, 88 N. E., 945, 89 N. E., 862; *Grand Rapids* v. *Braudy,* 105 Mich., 670, 32 L. R. A., 120, 55 Am. St. Rep., 472, 64 N. W., 29; *St. Louis* v. *Baskowitz,* 273 Mo., 543, 201 S. W., 870. No case has been found which holds the requirement unreasonable, although that question was reserved in *State* v. *Cohen,* 73 N. H., 543, 63 Atl., 928. The requirement is to be found in other statutes, the constitutionality of which has been sustained without specific reference to the point here presented, in cases listed in the note cited.

■ In *St. Louis* v. *Baskowitz, supra,* the provision of the statute that the record of purchases required to be kept should be open to "any citizen," as well as to the police, was construed to have reference "only to a citizen whose property has been stolen, and who demands inspection of the books to assist him in the discovery thereof." The similar provision of the statute before us should be given a like reasonable construction, in harmony with the declared object of the statute, stated in its caption, to "prevent the encouragement of theft."

█ The constitutional restriction upon the power of the state government to invade the privacy of citizens is against searches and seizures that are "unreasonable." Const., art. 1, sec. 7. In the regulation of a business, inherently susceptible of being used as an aid to theft in the disposition of stolen property, the operator is required to make and preserve a record which will aid in the recovery of stolen property. Restriction of this otherwise easy means of disposal and concealment will have a direct tendency to discourage the commission of theft, which is the declared object of the statute. The record which the police and the public are given the right to inspect is one made and kept for that purpose, and is not a private paper or record kept by the dealer for his own information. In imposing the burden of making the record upon the dealer, it is not to be presumed that the legislature intended to require the dealer to record and disclose evidence of his own criminality, but rather that the legislature assumed the innocence of the dealer and that his record would enable the owner of stolen property to trace his goods and establish the guilt of the seller as the thief. If the statute deters dishonest dealers from engaging in the business, the public safety is served, and the private rights of no individual are violated. If the record kept by a dealer discloses his own criminality, he must have known the fact when he made the entry on a record which he knew the public was entitled to inspect, and the disclosure of guilt is to that extent voluntary.

The statutory requirement that the record be kept is not unreasonable, and the right given to the police and interested public to inspect a record reasonably required to be kept for the purpose is not a violation of the constitutional restraint against unreasonable searches and

seizures, nor is it a violation of article 1, section 9, of the Constitution of Tennessee, which provides: "In all criminal prosecutions, the accused . . . shall not be compelled to give evidence against himself."

The judgment of the circuit court quashing the first count of the indictment will be reversed, and the case remanded.