**KARR v. BALDWIN et al.**
No. 3363—618.

District Court, N. D. Texas, Dallas Division.
March 11, 1932.

Dailey & Keller, of Dallas, Tex., for complainant.

William McCraw, State Dist. Atty., and Tom C. Clark and Guy L. Mann, Asst. Dist. Attys., all of Dallas, Tex., for respondents.

ATWELL, District Judge.

The complainant, joined by her husband, alleges that the defendants, Baldwin, justice of the peace, William McCraw, as district attorney, James Allred, as state Attorney General, and R. B. Gragg, as state commissioner of labor, are seeking and threatening to enforce against her the provisions of an Act of the 38th Legislature of the state of Texas (chapter 41), relating to employment agents, and that such a state law is invalid and unconstitutional, in that its provisions and requirements, when asserted against the plaintiff, are in violation of the Fourteenth Amendment to the Constitution, in that it deprives her of her property without due process of law.

That the defendant McCraw, district attorney, declared in a public radio address that he would enforce the act and prosecute all employment agencies that were violating the same, and that on February 17, 1932, the complainant was arrested on a complaint issued out of the defendant Baldwin's court, charging her with violation of said act. That the defendants are threatening to file and preparing to file other charges against her, and that such threatened numerous prosecutions will cause her great damage and injury. That a portion of the press of the city of Dallas has, in connection with such charges, made vicious and unwarranted assaults upon her and her business. Jurisdictional allegations of amount are made. She charges that these prosecutions will force her out of business and that her damages are incapable of measurement at law, and that she has no other method for the preservation of her business from destruction than the protection of a court of equity.

In order that time, money, and inconvenient sittings might be avoided, temporary injunction was waived and the cause came on for hearing for a permanent injunction.

Upon application for a temporary restraining order the court refused to interfere

with the one prosecution that had already been instituted, since there was a plain and adequate remedy at law in that particular case. Northport v. Hartley, 283 U. S. 568, 51 St. Ct. 581, 75 L. Ed. 1275.

There have been some interventions filed by others similarly situated and similarly threatened.

Upon final trial the testimony offered supports the material allegations of the complainant's cause in so far as amounts, threats, and activity of the defendants in the enforcement of the statutes complained of are concerned.

In 1923 the Legislature passed two statutes relating to employment agents. One contains fourteen articles (Vernon's Ann. Civ. St. Tex. arts. 5208–5221). It defines the term employment agency and employment office; excepts from its operation all agents who charge a fee of not more than $2 for procuring employment for school teachers; it also excepts state and national government departments, or bureaus when no fees are charged, and, "farmers and stockraisers acting jointly or severally in securing laborers for their own use where no fee is collected or charged directly or indirectly." Article 5209. And also any association or corporation chartered under the laws of Texas which conducts a free employment bureau, or agency.

There is then a provision for the licensing of private employment agencies on forms prescribed and furnished by the labor commissioner; the payment of a fee therefor and the giving of a bond in the sum of $5,-000. There is a provision for suits on such bond, and for the cancellation of the license for the offenses or conduct shown. The next article is as follows: "All the books, correspondence, memoranda, papers, and records of every kind and character incident to the business of an employment agent of each agent licensed under this chapter shall be subject to examination at any time by the Commissioner, his deputies, or inspectors, and the refusal of any agent to permit the Commissioner, his deputies, or inspectors, to inspect such correspondence, memoranda, papers and records at any time, shall be sufficient grounds for the Commissioner to cancel the license of such agent in accordance with the provisions of the fifth article of this chapter." Vernon's Ann. Civ. St. Tex. art. 5213.

The next article deals with false advertisements; the next with overcharging, in which it is provided that any fee in excess of $3 is not permitted, provided "employment agents engaged exclusively in providing employment for skilled, professional or clerical positions may charge, with the written consent of the applicant, a fee, not to exceed twenty percent of the first month's salary." Vernon's Ann. Civ. St. Tex. art. 5215. The next article provides for the giving of a receipt; the next denies the right to furnish any female for immoral purposes, or to an immoral place; the license provided for is made evidence in any court.

Article 5219 is: "The Commissioner and his deputies, or inspectors, shall have the authority of peace officers * * * and may enter any employment office at any time when such employment office is open for business, and inspect the registers and all other records of whatsoever kind and character of such employment agent for the purpose of ascertaining whether the provisions of this law are being violated, and the refusal of any employment agent to permit such inspection shall be sufficient reason for the Commissioner to cancel the license of such agent, in accordance with the provisions of Article 5212."

Article 5220, provides that the Attorney General may bring injunction suits against persons not complying with the provisions of the act, and the last article denies the right of any agent to send any person to a prospective employer who is conducting a "lockout," or whose employees are on a "strike" without first apprising such persons of the existence of such "lockout" or "strike."

The criminal statute passed by the same Legislature, and evidently for the purpose of aiding the enforcement of the civil statute just noticed, contains ten articles (Vernon's Ann. P. C. Tex. arts. 1584–1593), the first two of which relate to the same definitions and exceptions just noted. The third makes it a misdemeanor to engage in the business without first procuring a license. The next article requires the employment agent to keep a complete record of the business transacted; a substantially bound book in the form prescribed by the commissioner of labor in which shall be entered the age, sex, nativity, trade, or occupation, name and address of each person who makes application for employment, or for help, and to where and to whom such person was directed to go. A book shall also be kept in which the agent shall enter the name and address of every person, firm, corporation, or association, who make application to him for assistance in securing employees together with the number and kind of

employees desired, the amount of wages or salary to be paid, and the place where such employees are to work, and the date of the application and when received. Article 1587.

The next article prohibits the agent from knowingly admitting, or allowing to remain on his premises any prostitute, gambler, intoxicated person, or person of bad character.

The next subsection provides that the agent must use his name and address in all forms of advertising. The agent may not use any false or misleading advertising, nor give any false information, nor make any false representation, nor send out an applicant for employment to any prospective employer without first having obtained a bona fide written order from such prospective employer. Nor shall the agent furnish any female for immoral purposes, nor send a female to any immoral place; nor furnish employment to any child in violation of the statute relating to employment of children, or to compulsory school attendance; nor divide, or offer to divide, any fee with either the person who secures help through the agent, or with the person to whom help is referred by the agent. Article 1588.

Article 1589 contains the same provision with reference to charges that has been noted in the civil statutes, and limits professional employment agents to fees not to exceed 20 per cent. of the first month's salary. There is a provision which requires the employer and the person seeking employment to speak the truth.

The agent must display the license and the law. These shall be in both the English and Spanish language, and shall be in a certain size type. The punishment for the violation of any of the foregoing provisions shall be a fine of not less than twenty-five nor more than two hundred dollars. If any agent induces or attempts to induce any person to leave his or her employer with a view to having such person obtain employment through the agency, a fine of not less than fifty, nor more than two hundred and fifty dollars, or imprisonment not to exceed a year, or both such fine and imprisonment, shall follow. (The above numbers are the numbers of the articles shown in Vernon's Annotated Statutes.)

There can be no doubt of the complainant's right to seek redress here. Hanley v. Moody (D. C.) 39 F.(2d) 198; Adams v. Tanner, 244 U. S. 590, 37 S. Ct. 662, 61 L. Ed. 1336, L. R. A. 1917F, 1163, Ann. Cas. 1917D, 973; Ribnik v. McBride, 277 U. S. 350, 48 S. Ct. 545, 72 L. Ed. 913, 56 A. L. R. 1327; Terrace v. Thompson, 263 U. S. 206, 44 S. Ct. 15, 68 L. Ed. 255.

Nor is there any doubt about the right of the state Legislature to legislate with reference to the conduct of employment agencies. Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. Ed. 1034. The limits to which such Legislature may go are somewhat blazed in Hanley v. Moody, Adams v. Tanner, Ribnik v. McBride, supra.

█ No valid law can be passed which denies the employment agency and the citizen the right to make a contract for such fee as they may see fit. The provisions, therefore, in article 1589 and article 5215, are invalid. The right of the citizen to contract for services performed, or to be performed, when there is no disability, is highly valuable and may not be invaded by the lawmaking power.

█ Complainant criticizes the provisions in both the civil and the criminal statute which except from their operation farmers and stock-raisers, when acting jointly or severally in procuring laborers for their own use, where no fee is collected, or charged directly or indirectly; and the provision which excepts free employment bureaus.

The constitutional guaranty of the equal protection of the laws is interposed against discriminations that are entirely arbitrary; as, for instance, where a statute is directed at the use of a motor vehicle and prescribes certain restrictions for a privately owned car, and excepts a car owned in some other way. It would be difficult in such a situation to find a just reason for the exception. Smith v. Cahoon, 283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264; Lossing v. Hughes (Tex. Civ. App.) 244 S. W. 556; Beaumont Traction Co. v. State, 57 Tex. Civ. App. 605, 122 S. W. 615; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679; Cotting v. Godard, 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 124, 66 L. Ed. 254, 27 A. L. R. 375. But the exception that we are now considering is wholly different. It is neither arbitrary nor capricious. The farmer or stock-raiser or the free bureau make no charge. They seek immediate assistance. There is every reason why there should be no fraud or overreaching in their solicitations or placings. The difference between a gratis service and a pay service is recognized in such cases as Lindsley v. Natural Carbonic Gas Company, 220 U. S. 61, 31 S. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160; Radice v. New York, 264 U. S. 292, 44 S. Ct. 325, 68 L. Ed. 690;

American Sugar Refinery Co. v. Louisiana, 179 U. S. 89, 21 S. Ct. 43, 45 L. Ed. 102; Williams v. Fears, 179 U. S. 270, 21 S. Ct. 128, 45 L. Ed. 186; Bryant v. Zimmerman, 278 U. S. 73, 49 S. Ct. 61, 73 L. Ed. 184; Patsone v. Pennsylvania, 232 U. S. 138, 34 S. Ct. 281, 58 L. Ed. 539; Central Lumber Co. v. South Dakota, 226 U. S. 157, 33 S. Ct. 66, 57 L. Ed. 164; Miller v. Wilson, 236 U. S. 373, 35 S. Ct. 342, 59 L. Ed. 628, L. R. A. 1915F, 829.

The thing that determines the question is whether the restrictions have a reasonable relation to a proper purpose. If so, there can be no arbitrary restraint. A state Legislature is not debarred from classifying according to general construction, and with regard to prevailing conditions. If the state were deprived of such a right, there would be no legislative power to classify. This freedom to recognize degrees of harm must be conceded. The state has the right to confine its restrictions to those classes which it deems need them. "If the law hits an evil where it is most felt the prohibition need not be all-embracing."

Because some of those who engage in farming have been guilty of peonizing is not sufficient reason to deny the right of the Legislature to exempt farmers from the operation of the statute directed at employment agents. As reprehensible as peonage is, one would be careless indeed to charge any considerable number of farmers with such a practice, nor is there sufficient ground to think that such practices would be lessened by making farmers amenable to employment agency regulation.

Likewise, I see no vice in article 5219, which endows the deputies and inspectors of the labor commission with the rights of peace officers, and gives them entrée, "when the employment office is open for business," for the purpose of inspecting the records that the act provides shall be kept by the agency. Such provisions are not contrary to either the state or the national Constitutions (Const. Tex. art. 1, § 9; Const. U. S. Amend. 4), which protect the citizen from unreasonable searches and seizures. Pawnbrokers, express companies, liquor venders, and many other kinds of businesses have long since been subject to just that sort of public scrutiny. Interstate Forwarding Co. v. Vineyard (Tex. Civ. App.) 3 S.W.(2d) 947; Hughes v. State, 67 Tex. Cr. R. 333, 149 S. W. 173; City of Saint Joseph v. Levin, 128 Mo. 588, 31 S. W. 101, 49 Am. St. Rep. 577; City of Saint Louis v. Baskowitz, 273 Mo. 543, 201 S. W. 870; Mansbach Scrap Iron Co. v. Ashland, 235 Ky. 265, 30 S.W.(2d) 968; Baltimore & Ohio v. Interstate Commerce Commission, 221 U. S. 612, 31 S. Ct. 621, 55 L. Ed. 878; State v. Legora, 162 Tenn. 122, 34 S.W.(2d) 1056.

It seems, therefore, that the complainant's prayer must be denied save and except that the defendants are perpetually enjoined from prosecuting or interfering in any way with her rights to disregard those two articles of the statute, which fix the amount of fees that she may charge. The prohibition is also for the benefit of the interveners.

That the act is severable and remains, as to its other provisions, unaffected by striking down the provisions relating to fees, is supported by Brazee v. Michigan, 241 U. S. 340, 36 S. Ct. 561, 60 L. Ed. 1034.

The reasoning in Williams v. Standard Oil Company, 278 U. S. 235, 49 S. Ct. 115, 73 L. Ed. 287, 60 A. L. R. 596, does no violence to this position. The presumption is against any mutilation of a statute, but a court will eliminate a section which is unconstitutional provided such section is sufficiently independent and separable to permit the removal without substantially affecting the other features and purposes of the act. To take out of the present act the limitation upon the fees leaves the act with many salient and highly effective and important regulations. It would be unreasonable to hold that the Legislature would not have passed the act if the fee provision had been left out. Every indication is that it is full of good purposes sans price fixing.

The charge that the officers make use of the information secured by an inspection of the records by giving them to certain newspapers warrants the observation that officers so acting lay themselves liable to an action at law, and does not require the interposition of the staying hand of equity at this moment.

Decree may be prepared in accordance with these views.