Rust *et al. v.* Griggs.

*(Nashville,* December Term, 1937.)

Opinion filed March 7, 1938.

566

ALBERT A. WHITE, of Nashville, for appellant.

JAMES A. NEWMAN, of Nashville, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by the complainants Rust and Lanier, partners engaged in the retail grocery business in Nashville, against defendant Griggs, engaged in a similar business in Nashville, to restrain the latter from certain business practices charged to have been within the denunciation of chapter 69 of the Public Acts of 1937. A demurrer was filed by defendant which challenged the construction put upon the act by complainants, and also challenged the validity of the act as a whole. The chancellor overruled the demurrer and granted the injunction as prayed. The defendant, electing to stand on his demurrer, prayed and was granted an appeal to this court.

The bill set out that complainants and defendant were

engaged in the same line of business in the same section of the city of Nashville, and that defendant had on a day or days specified advertised and sold sugar and fruit jars at prices below cost, as that term is defined in the Act of 1937, all with the intent of misleading the public, unfairly diverting trade from complainants, and to the impairment of fair competition. The facts stated in the bill, being admitted by demurrer, will not be further detailed just here. The demurrer presenting questions as to the proper construction of the act and as to the constitutionality of the act as a whole, these matters may be properly first considered, and the act, sustained and construed, then applied to the facts of this case.

Chapter 69 of the Public Acts of 1937 bears this title:

"An Act to promote fair competition in trade and industry, to prohibit unfair competition therein, declaring certain practices unfair and making same illegal, and providing penalties for the violation of this Act and remedies to persons damaged by any such violation."

Section 1 of the Act, in lettered subsections, defines the terms used in the act. Some of these definitions will be particularly examined hereinafter.

We set out sections 2, 3, and 4 of the Act:

"Sec. 2. Be it further enacted, That it is hereby declared that advertising, offers to sell or sales by retailers or wholesalers at less than cost as defined in this Act, with the intent or effect of inducing the purchase of other merchandise or of unfairly diverting trade from a competitor or otherwise injuring a competitor, impair and prevent fair competition, injure public welfare, and are unfair competition and contrary to public policy, where the result of such advertising, offers or sales

is to tend to deceive or mislead any purchaser or prospective purchaser or to substantially lessen competition or unreasonably restrain trade or tend to create a monopoly in any line of commerce. It is further declared that such advertising; offers or sales by any retailer or wholesaler with such intent or effect or result are in contravention of the policy of this Act.

"Sec. 3. Be it further enacted, That any retailer who shall, in contravention of the policy of this Act, advertise, offer to sell or sell at retail any merchandise at less than cost to the retailer as defined in this Act, shall be guilty of a misdemeanor, punishable upon the first conviction by a fine of not less than $5.00, nor more than $50.00, and upon each subsequent conviction punishable by a fine of not less than $50.00, nor more than $500.00. Any wholesaler, who shall, in contravention of the policy of this Act, advertise, offer to sell, or sell at wholesale any merchandise at less than cost to the wholesaler as defined in this Act, shall be guilty of a misdemeanor punishable as above set forth. Proof of any such advertising, offer to sell or sale by any retailer or wholesaler in contravention of the policy of this Act shall be *prima facie* evidence of a violation of this Act.

"Sec. 4. Be it further enacted, That in addition to the penalties provided in this Act, the state's attorney of any county or any person damaged, or who is threatened with loss or damage, by reason of a violation of this Act, shall have the right to apply for an injunction, and any court of competent jurisdiction shall have power to restrain sales in violation of this Act."

Section 5 of the Act excepts from its provisions (a) isolated transactions; (b) *bona fide* clearance sales; (c) sales of highly perishable merchandise; (d) damaged

merchandise sold as such; (e) merchandise sold in liquidation; (f) merchandise sold for charitable purposes; (g) merchandise sold to government institutions or departments; (h) merchandise sold in meeting the legal price of a competitor; (i) sales by any officer under court orders.

In consideration of this statute we may first observe that it is not a price-fixing law. It is not therefore necessary to consider decisions of this court and the Supreme Court of the United States respecting statutes of that sort. As appears from section 2 of the statute, its object is to prevent deception of the public and to prevent practices which tend to injure competitors unfairly and thereby lessen competition or unreasonably restrain trade or create a monopoly. Section 2 declares that "advertising, offers or sales by any retailer or wholesaler with such intent or effect or result are in contravention of the policy of this Act."

Section 3 of the Act provides that a retailer who shall, "in contravention of the policy of this Act," advertise, offer to sell, or sell at retail any merchandise at less than cost shall be guilty of a misdemeanor, and section 4 of the Act provides for the restraint by injunction of such practices.

Sales at less than cost therefore are not denounced by the Act of 1937 unless such sales are made with the intent or effect to deceive the public, to injure competitors, or to destroy competition.

Legislation for the prevention of fraud and deception, especially in sales of food and other essentials of life, has always been recognized as well within the police power of the state. *State* v. *W. M. Ausmus Mill Co.*, 123 Tenn., 399, 131 S. W., 867, Ann. Cas., 1912C,

248. See, also, *Samuelson* v. *State,* 116 Tenn., 470, 95 S. W., 1012, 115 Am. St. Rep., 805; *State* v. *Legora.* 162 Tenn., 122, 34 S. W. (2d), 1056.

So legislation to foster free competition and to prevent monopolies is quite uniformly sustained. *Standard Oil Co.* v. *State,* 117 Tenn., 618, 100 S. W., 705, 10 L. R. A. (N. S.), 1015; *State* v. *Witherspoon,* 115 Tenn., 138, 90 S. W., 852; *State* v. *Schlitz Brewing Co.,* 104 Tenn., 715, 59 S. W., 1033, 78 Am. St. Rep., 941; *Bailey* v. *Master Plumbers,* 103 Tenn., 99, 52 S. W., 853, 46 L. R. A., 561.

Construed as above, the statute is freed from many of the constitutional objections urged against it.

■ Before considering the assignments of error in detail, it will be necessary to quote (a) of section 1 of the statute, which is as follows:

"The term 'Cost to the retailer' shall mean whichever is lower of the following: (1) the purchase price of the product or commodity to the retailer at the retail outlet when invoice is dated not more than 60 days prior to the sale of such product or commodity by the retailer, or (2) the replacement cost of such product or commodity to the retailer at the time of sale in the quantity last purchased by the retailer; less any legitimate trade discounts but exclusive of cash discounts for prompt payment, and plus a mark-up amounting to [not] less than the minimum cost of distribution by the most efficient retailer, which mark-up, in the absence of proof to the contrary, shall be six per cent. (6%). In all retail sales involving more than one item or commodity, the retailer's price on individual items or commodities shall be computed on the 'cost to the retailer' as herein defined."

The first assignment of error is based on the idea that under this definition of cost to the retailer the statute does not require a markup on merchandise purchased not more than sixty days prior to the sale by the retailer. The contention is that the markup is only required when "cost to the retailer" is determined by the replacement cost instead of the purchase price. It is said that the bill herein does not aver that the invoice for the sugar in question was dated more than sixty days prior to the sale of the sugar by the defendant.

This assignment of error rests upon a misinterpretation of (a) of section 1. Cost to the retailer is "whichever is lower" purchase price within sixty days or replacement cost. "(1)" and "(2)" are separated by a comma only. They are connected clauses, both explanatory of "whichever is lower." "(2)" is followed by a semi-colon, and the markup provision following the semi-colon is applicable both to "(1)" and "(2)."

The complainants demonstrate the foregoing construction by the application of somewhat esoteric rules of grammar and punctuation, and that such construction is correct is made more apparent by the application of an accepted rule of statutory interpretation, namely, "when several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all." *Porto Rico Ry., etc., Co.* v. *Mor*, 253 U. S., 345, 40 S. Ct., 516, 518, 64 L. Ed., 944.

The second assignment of error makes the point that the bill shows defendant sold the sugar for a price equal to its invoice cost with some markup, and it is said that the statute provides that the retailer is only re-

quired to add a markup "less than the minimum cost of distribution by the most efficient retailer."

The statute does read as stated by defendant. It is obvious, however, that the word "not" should have preceded the words just above quoted, and that "not" was inadvertently here omitted. Such omission renders the definition of the markup senseless and ineffective. Under such circumstance, the court will supply the word "not" to carry out the plain legislative intent. *Johnson* v. *Baker,* 149 Tenn., 613, 259 S. W., 909; *Ashby* v. *State,* 124 Tenn., 684, 139 S. W., 872.

The third assignment of error is largely based on a literal reading of the statute omitting the word "not" in the definition of markup. We repeat that the word "not" must be supplied. Included in this assignment of error is the proposition that an unreasonable and oppressive burden is placed upon the retailer to locate at his own risk the most efficient retailer and then from the private records of such efficient retailer to ascertain his cost of distribution.

We think the words "most efficient retailer" were not intended to designate any particular individual. The words were used in a generic sense. The cost of distribution, within the contemplation of the Legislature, was the cost of distribution by the most efficient retailers. To ascertain such cost of distribution is no great task. Matters of that sort are readily available in numerous trade surveys contained in trade journals and other publications.

There is nothing unusual in the further provision of (a) of section 1 that the markup "in the absence of proof to the contrary, shall be six per cent. (6%)." The effect of this is that proof of a markup of

less than 6 per cent. is *prima facie* evidence that a sale has been made at less than the minimum cost of distribution. This is merely a rule of evidence adopted by an act of the Legislature. This court has said that "the power of the Legislature to prescribe rules of evidence, and to declare what shall be evidence, is practically unrestrained, and legislation, to those ends, will be upheld so long as it is impartial and uniform, and does not 'preclude a party from exhibiting his rights.' " *State* v. *Yardley,* 95 Tenn., 546, 565, 32 S. W., 481, 485, 34 L. R. A., 656. The presumption thus created of course may be rebutted.

The fourth assignment of error is based on misinterpretation of (a) of section 1 heretofore quoted.

The fifth assignment of error makes the point that the statute deprived defendant of his property rights in violation of article 1, section 8, of the Constitution of Tennessee, and the Fourteenth Amendment to the Federal Constitution, in that it requires the retailer who has bought merchandise on a low market more than sixty days prior to a sale to advance his prices to an amount equal to the replacement cost plus a markup for cost of distribution, regardless of the fact that he could sell same at a good profit without such advance in price.

Section 5 of the Act of 1937 excepts from its operation isolated transactions not in the usual course of business, and also excepts *bona fide* clearance sales advertised as such. These exceptions would no doubt permit any merchant to rid his shelves of old stock at any price he chose without hindrance by the statute. It may be added that there is nothing before us to show that defendant bought on any low market at any time. To

the contrary, the bill charges he sold fruit jars for less than they cost him and sold sugar for less than cost and cost of distribution.

The sixth assignment of error makes the point that the statute is a burden on interstate commerce in violation of section 8 of article 1 of the United States Constitution, in that a retailer or wholesaler is denied the right to use invoice cost on goods purchased in another state on a market lower than that existing in Tennessee as a basis for his selling price, even though a fair profit could thereby be made. This argument is founded on (c) of section 1, as follows:

"The terms 'cost to the retailer' and 'cost to the wholesaler' must be *bona fide* costs, and sales to retailers and wholesalers at prices which cannot be justified by existing market conditions within this state shall not be used as a basis for computing costs with respect to sales by retailers and wholesalers."

Market conditions in the subsection just quoted refer to conditions upon which the wholesaler and retailer in this state can purchase goods. The subsection deals with cost to the retailer and cost to the wholesaler. Marketing includes buying as well as selling. The language quoted is no attempt at regulation of the sale of goods in Tennessee by the retailer or by the wholesaler. The language quoted merely means that in computing his cost, or purchase price, the local merchant cannot use as a basis some exceptional sale price made to him, either in this state or another state, not justified by market conditions.

The seventh, eighth, and ninth assignments of error seem to be founded on the idea that the statute imperatively requires a markup of 6 per cent. by re-

tailers other than the most efficient retailers and thereby discriminates between inefficient and efficient retailers. We do not follow this argument. The statute sanctions a markup not less than the minimum cost of distribution by the most efficient retailers and, as we have observed, information as to this is accessible to the trade.

Returning to the facts of this particular case, it appears from the allegations of the bill and an exhibit thereto that by large posters the defendant advertised that he would on Friday and Saturday, September 3 and 4, 1937, sell 10 pounds of pure cane sugar for 51½ cents. That he would sell Ball Mason fruit jars, quarts at 65 cents a dozen; half gallons at 90 cents a dozen.

These offers were headed in large type by the following: "Attention Housewives!! We Offer These Canning Season Specials." At the top of this poster was the defendant's trade-name and address, and the words "Pay Cash; Pay Less."

In addition to the foregoing the poster advertises various other articles that the defendant will have on sale on the days mentioned, followed by the prices at which he proposes to sell such articles. As to these other articles the bill sets out that the poster advertises pears in No. 2½ cans 2 for 25 cents. Same articles were selling at other stores for 20 cents to 23 cents. The poster advertised Polly Rich flour 24 pounds for 99 cents. The bill charges that this flour in this quantity was selling at other stores for 95 cents. The poster advertised Lipton's tea ¼ lb. for 25 cents. The bill charges that this tea in that quantity was sold at other stores at from 20 cents to 23 cents.

It thus appears from the bill and the exhibits that

while defendant was taking a loss on the sugar sold and the fruit jars sold, he was charging more than the market price for various other articles advertised for sale on these particular days. As we have noted above, a heading of the poster was, "Pay Cash; Pay Less."

This advertising was plainly deceptive. The poster indicated that all the articles enumerated thereon were to be sold for cash and for less than they could be had elsewhere. As a matter of fact, according to the bill, with the exception of the two loss leaders, sugar and fruit jars, the other articles advertised were sold at market prices and some of them at prices above market prices.

In addition to misleading purchasers, such advertising and such business practices as the foregoing unfairly divert trade from competitors, constitute unfair competition, and tend to put competitors out of business, and unreasonably restrain trade.

The complainants were entitled to an injunction. We think, however, the injunction issued by the chancellor was too broad. The defendant was enjoined from advertising, offering to sell, or selling, merchandise in violation of the terms and provisions of the Act of 1937, and particularly at prices below cost as defined by said act and prescribed thereby for retailers. We have adjudged that defendant violated the Act of 1937 in specific particulars. An order should be entered restraining him from further like violations of the act. He should not, however, be enjoined in general terms from violating the act in the future in every particular, for that would, as pointed out by the Supreme Court, compel defendant to conduct all his business under the jeopardy of punishment for violating a general injunction and

violative of elementary principles of justice. *New York, N. H. & H. R. Co.* v. *Interstate Commerce Commission,* 200 U. S., 361, 26 S. Ct., 272, 50 L. Ed., 515.

So modifying the injunction, the decree of the chancellor is affirmed.

NOTE: Counsel call our attention to the fact that statutes similar to chapter 69 of the Public Acts of 1937 have been enacted in quite a number of states. Our attention has been called to the decision of but one court considering such an enactment. In the case of *People* v. *Kahn*, 19 Cal. App. (2d) Supp., 758, 60 P. (2d), 596, one of the California appellate courts had before it a statute of that state quite like our Act of 1937. The California court sustained the validity of the statute and construed it in substantial accord with the construction that we have given to our statute.