## Commonwealth v. Hodin

*Mitchell Jenkins*, assistant district attorney, for Commonwealth.

*Alex Marcus* and *Lenahan, Fahey & Casper*, for defendant.

VALENTINE, J., December 1, 1938.—Defendant stands indicted for a violation of the Fair Sales Act of July 1, 1937, P. L. 2672. The specific charge is that he "did wilfully and unlawfully advertise to sell at retail . . . certain merchandise, to wit, White House Coffee in one-pound packages at less than cost to him."

By demurrer to the indictment, defendant challenges the constitutionality of said act asserting that it is violative of sections 1 and 9 of article I of the State Constitution and of section 1 of amendment XIV of the Federal Constitution. The Fair Sales Act is entitled:

"An act to insure and protect fair trade practices in distribution; defining such practices; prohibiting the advertisement, offer for sale, or sale of merchandise at less than cost; and fixing a penalty for such advertisement, offer for sale, or sale; and investing the courts

with jurisdiction to prevent and restrain violations of the act."

Section 1(d) of the act defines a sale at retail as "any transfer of title *to tangible personal property* for a valuable consideration, where such property is to be used by the purchaser for purposes other than resale, manufacture, or further processing." (Italics supplied.)

A sale at wholesale is defined in section 1(e) as "any transfer of title *to tangible personal property* for a valuable consideration, where such property is to be used by the purchaser for purposes of resale, manufacture, or further processing." (Italics supplied.) Sections 2 and 3 of the act provide:

"Section 2. It is hereby declared that the advertisement, offer for sale, or sale of any merchandise at less than cost by retailers or wholesalers is prohibited.

"Section 3. Any retailer who shall advertise, offer to sell, or sell at retail, any merchandise at less than cost to the retailer, as defined in this act, or any wholesaler who shall advertise, offer to sell, or sell at wholesale, any merchandise at less than cost to the wholesaler, as defined in this act, shall be guilty of a misdemeanor, and, upon conviction thereof, shall be punished by a fine of not more than five hundred dollars ($500). Proof of any such advertisement, offer to sell, or sale, by any retailer or wholesaler, shall be prima facie evidence of a violation of this act."

Defendant urges that these provisions infringe the constitutional guaranty of freedom of the individual to contract concerning his property. The case presents the question of which of two powers or rights shall prevail—the power of the State to legislate or the right of the individual to liberty of person or freedom of contract: Lochner v. New York, 198 U. S. 45, 57.

As stated in Nebbia v. New York, 291 U. S. 502, 524, these correlative rights, that of the citizen to exercise exclusive dominion over property and freely to contract about his affairs, and that of the State to regulate the use

of property and the conduct of business are always in collision. The fundamental law of the State recognizes the absolute right of private property in declaring that men have the inherent and indefeasible right of acquiring, possessing, and protecting property. This absolute right to acquire, possess, and protect property includes the right to make reasonable contracts in relation to it to be protected by the law, for the privilege of contracting is a property right without which there cannot be free and full use and enjoyment of property.

Freedom of contract is the general rule and restraint the exception; and the exercise of legislative authority to abridge it can be justified only by the existence of exceptional circumstances: Adkins et al., etc., v. Children's Hospital of the District of Columbia, 261 U. S. 525, 545.

Neither property rights nor contract rights are absolute, for government cannot exist if the citizen may at will use his property to the detriment of his fellows, or so exercise his freedom of contract: Nebbia v. New York, supra.

Equally fundamental with the private right is that of the public to regulate in the common interest, but this may only be done by reason of the fact that private right must yield to the public need. The guaranty of due process demands only that the laws shall not be unreasonable, arbitrary, or capricious and that the means selected shall have a real and substantial relation to the object sought to be attained.

A State legislature is without constitutional power to fix prices at which commodities may be sold, service rendered, or property used, unless the business or property is "affected with a public interest": Rohrer v. Milk Control Board, 322 Pa. 257; Charles Wolff Packing Co. v. Court of Industrial Relations, etc., 262 U. S. 522; Tyson & Brother, etc., v. Banton, etc., et al., 273 U. S. 418; Fairmont Creamery Co. v. Minnesota, 274 U. S. 1. The price of commodities can only be fixed by legislative enactment if the business or property involved is affected

with a public interest: Chas. Wolff Packing Co. v. Court of Industrial Relations, etc., supra. The term "affected with a public interest" is employed to describe a limited classification of businesses which by reason of peculiar relations to the public or privileges granted by the State are subject to a more extensive control than other businesses. The control is exercised by virtue of the police power of the State, a power inherent in a government to enact laws necessary to promote order, safety, health, morals, and general welfare in some aspects.

In the Chas. Wolff Packing Company case, supra, Chief Justice Taft declared (pp. 535, 536):

"Businesses said to be clothed with a public interest justifying some public regulation may be divided into three classes:

"(1) Those which are carried on under the authority of a public grant of privileges which either expressly or impliedly imposes the affirmative duty of rendering a public service demanded by any member of the public. Such are the railroads, other common carriers and public utilities.

"(2) Certain occupations, regarded as exceptional, the public interest attaching to which, recognized from earliest times, has survived the period of arbitrary laws by Parliament or Colonial legislatures for regulating all trades and callings. Such are those of the keepers of inns, cabs and grist mills. *State* v. *Edwards*, 86 Me. 102; *Terminal Taxicab Co.* v. *District of Columbia*, 241 U. S. 252, 254.

"(3) Businesses which though not public at their inception may be fairly said to have risen to be such and have become subject in consequence to some government regulation. They have come to hold such a peculiar relation to the public that this is superimposed upon them. In the language of the cases, the owner by devoting his business to the public use, in effect grants the public an interest in that use and subjects himself to public regulation to the extent of that interest although the property continues to

belong to its private owner and to be entitled to protection accordingly. *Munn* v. *Illinois*, 94 U. S. 113; *Spring Valley Water Works* v. *Schottler*, 110 U. S. 347; *Budd* v. *New York*, 117 N. Y. 1, 27; s. c. 143 U. S. 517; *Brass* v. *Stoeser*, 153 U. S. 391; *Noble State Bank* v. *Haskell*, 219 U. S. 104; *German Alliance Insurance Co.* v. *Lewis*, 233 U. S. 389; *Van Dyke* v. *Geary*, 244 U. S. 39, 47; *Block* v. *Hirsh*, 256 U. S. 135.

"It is manifest from an examination of the cases cited under the third head that the mere declaration by a legislature that a business is affected with a public interest is not conclusive of the question whether its attempted regulation on that ground is justified. The circumstances of its alleged change from the status of a private business and its freedom from regulation into one in which the public have come to have an interest are always a subject of judicial inquiry.

"In a sense, the public is concerned about all lawful business because it contributes to the prosperity and well being of the people. The public may suffer from high prices or strikes in many trades, but the expression 'clothed with a public interest,' as applied to a business, means more than that the public welfare is affected by continuity or by the price at which a commodity is sold or a service rendered. The circumstances which clothe a particular kind of business with a public interest, in the sense of *Munn* v. *Illinois* and the other cases, must be such as to create a peculiarly close relation between the public and those engaged in it, and raise implications of an affirmative obligation on their part to be reasonable in dealing with the public."

Section 5 of the Fair Sales Act provides that its provision shall not apply to sales at retail or sales at wholesale:

"(*a*) where merchandise is sold in bona fide clearance sales, and is advertised, marked, and sold as such; (*b*) where perishable merchandise must be promptly sold in order to forestall loss; (*c*) where merchandise is imperfect, or damaged, or is being discontinued, and is adver-

tised, marked, and sold as such; (*d*) where merchandise is sold upon the final liquidation of any business; (*e*) where merchandise is sold for charitable purposes; (*f*) where the price of merchandise is made to meet the legal price of a competitor for merchandise of the same grade, quality, and quantity; and (*g*) where merchandise is sold by any officer acting under the direction of any court."

If the containers of the coffee designated in the indictment were marred or dirty but the merchantable character of the coffee was not affected and it was deemed inadvisable to keep the merchandise in stock, its sale at less than cost would be violative of the act unless the coffee was advertised, marked, and sold as imperfect or damaged merchandise.

An automobile dealer who at the end of a year had on hand cars of that year's manufacture and who was obliged, under his contract with the manufacturer, to dispose of a certain number of cars during that year, could not dispose of the cars on hand at less than cost without violating the provisions of the act. So also, if an automobile dealer became distributor for a car of a different make and had on hand one car of the kind he had previously sold and in order to dispose of the same before displaying the new models was willing to sell it at less than cost, he would be obliged to mark the car (advertised or sold) as being discontinued.

A dealer in new and second-hand automobiles who had purchased a second-hand car for cash or by making an allowance to the purchaser of a new car could not, in the regular course of his business, dispose of the car so procured unless he sold it at or above the cost to him.

A dealer in livestock could not dispose of any of his herd at less than cost although he might deem it advisable to do so rather than expend the amount necessary for their care and maintenance during the winter months.

These illustrations would apply with equal force to the sale of any kind of "tangible personal property" and examples might be multiplied indefinitely, but those desig-

nated sufficiently indicate that the act not only seriously restricts but actually impairs freedom of contract. On what theory can it be said that the business of every person who sells goods of any kind or type, either at wholesale or retail, is affected with public interest? The act does not relate to articles of food alone but, in effect, fixes the price of goods of every character and description. It constitutes a wide departure from legislation which fixes merely the price of a single commodity such as milk: Rohrer v. Milk Control Board, supra; Nebbia v. New York, supra.

In Chas. Wolff Packing Co. v. Court of Industrial Relations, etc., supra, at page 537, Taft, C. J., said:

"It has never been supposed, since the adoption of the Constitution, that the business of the butcher, or the baker, the tailor, the wood chopper, the mining operator or the miner was clothed with such a public interest that the price of his product or his wages could be fixed by State regulation. It is true that in the days of the early common law an omnipotent Parliament did regulate prices and wages as it chose, and occasionally a Colonial legislature sought to exercise the same power; but nowadays one does not devote one's property or business to the public use or clothe it with a public interest merely because one makes commodities for, and sells to, the public in the common callings of which those above mentioned are instances."

In New State Ice Co. v. Liebmann, 285 U. S. 262, Mr. Justice Sutherland declared (p. 278):

"Under that amendment [14th], nothing is more clearly settled than that it is beyond the power of a state, 'under the guise of protecting the public, arbitrarily [to] interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them' ".

The title of the act indicates that its purpose is to insure fair trade practices, but the language of the body of the act is not confined to such practices, but is all-embracing.

We are not prepared to hold that the sale of goods at less than cost made for the specific purposes of injuring competitors and destroying competition could not be prohibited. The cases of Rust et al. v. Griggs, 172 Tenn. 565, 113 S. W. (2d) 733, and The People v. Kahn, 19 Cal. App. (2d) 758, 60 P. (2d) 596, involved legislation of such character. The act now under consideration, however, prohibits the sale of all "tangible personal property" at less than cost irrespective of the circumstances of the sale and regardless of the purpose or intent of the seller, unless the sale falls within one of the exceptions designated in section 5 of the act.

Price cutting in itself has never been deemed unfair competition: Sears, Roebuck & Co. v. Federal Trade Comm., 258 Fed. 307; and no common-law right has been more firmly established or more treasured than the right of the individual to sell his goods or his services at whatever price he and the purchaser might agree upon: Tyson & Bro., etc., v. Banton, etc., et al., supra; Wilentz, etc., v. Crown Laundry Service, Inc., et al., 116 N. J. Eq. 40, 172 Atl. 331, 332.

In Sears, Roebuck & Co. v. Federal Trade Comm., supra, the act under consideration forbade unfair methods of competition. In holding that a sale of commodities below cost did not constitute a violation of its provisions, Baker, Circuit Judge, declared (p. 312):

"We find in the statute no intent on the part of Congress, even if it has the power, to restrain an owner of property from selling it at any price that is acceptable to him or from giving it away. But manifestly in making such a sale or gift the owner may put forward representations and commit acts which have a capacity or a tendency to injure or to discredit competitors and to deceive purchasers as to the real character of the transaction."

As stated by Vorsanger, J., in the recent case of State v. Packard-Bamberger & Co., Inc., 2 Atl. (2d) 599 (N. J.), in the district court of the third judicial district of the County of Bergen:

"Although the 'Fair Sales Act' might help a few selfish interests, it would be detrimental to the public as a whole. The buying public would be forced to purchase articles at higher prices, increasing the cost of living. The legislation fixing prices must be directed to articles which are affected with a public interest and not take away the common law rights of the people."

The act passed upon in that case like the act now under consideration declared "that the advertisement, offer for sale, or sale of any merchandise at less than cost by retailers is prohibited."

We think the act upon which the indictment is based offends the provisions of the State and Federal Constitutions referred to in the demurrer.

Therefore, now, December 1, 1938, the demurrer is sustained.