IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT NASHVILLE

NOVEMBER 1999 SESSION

FILED

January 13, 2000

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | No. 01C01-9903-CC-00110 |
| | | M1999-00003-CCA-R3-CD |
| Appellee, | * | RUTHERFORD COUNTY |
| VS. | * | Hon. J. Steve Daniel, Judge |
| ROBERT L. MALLARD, | * | (Possession of Drug Paraphernalia) |
| Appellant. | * | |

For Appellant:

Brion J. Payne
Assistant Public Defender
201 West Main Street, Suite 101
Murfreesboro, TN 37130

For Appellee:

Paul G. Summers
Attorney General & Reporter

Marvin E. Clements
Assistant Attorney General
Criminal Justice Division
425 Fifth Avenue North
Nashville, TN 37243

Paul A. Holcombe, III
Assistant District Attorney
303 Rutherford County Judicial Building
Murfreesboro, TN 37130

OPINION FILED:_____

AFFIRMED

GARY R. WADE, PRESIDING JUDGE

**OPINION**

The defendant, Robert Lee Mallard, was convicted of possession of drug paraphernalia, a Class A misdemeanor. Tenn. Code Ann. § 39-17-425. The trial court imposed a jail sentence of eleven months and twenty-nine days with a seventy-five percent minimum service requirement. Fines totaled $750.00.

In this appeal of right, the defendant presents two issues for review:

(I) whether the trial court erred by denying the defendant's motion to dismiss based on the state's loss of evidence;

(II) whether the trial court erred by failing to exclude evidence of the defendant's prior drug-related convictions.

We find no error and affirm the defendant's conviction.

On July 27, 1997, Detective Robert Anthony Prestininzi and Officer Chuck Barnes, both with the narcotics division of the Rutherford County Sheriff's Office, were conducting surveillance of a suspected drug house on Bradyville Pike. At approximately 9:15 P.M., the defendant drove a vehicle into the driveway, parked, and walked inside the residence. A female passenger remained in the car. The defendant stayed inside for a few minutes and then returned to his car. The defendant did not appear to be carrying anything either when he entered or when he left the house.

After the defendant returned to the car, he traveled east on Bradyville Pike. Detective Prestininzi and Officer Barnes began pursuit in an unmarked vehicle. Detective Prestininzi paced the defendant's vehicle and concluded that it was being driven at a higher rate of speed than the posted speed limit. Officer Barnes, who did not look at the speedometer, also believed that the defendant was traveling at a rate above the speed limit. When the defendant made an abrupt turn from Rutherford Boulevard onto Kensington Drive, Detective Prestininzi activated his siren and lights. At trial, Detective Prestininzi explained that he stopped the car for

2

speeding, but conceded that he was also motivated by his belief that the defendant had just engaged in an illegal drug transaction.

Detective Prestininzi approached the vehicle and spoke with the defendant, who was still seated in the driver's seat. Officer Barnes went to the passenger side of the vehicle and spoke with the female passenger. Detective Prestininzi testified that he asked for and received the defendant's consent to conduct a search of the vehicle. Officer Barnes testified that he heard the defendant give consent for the search. The officers recovered what appeared to be a crack pipe from the center console. Detective Prestininzi testified that the defendant admitted that the pipe belonged to him, that he had an addiction to crack cocaine, and that he had smoked crack cocaine the previous day. No illegal drugs were found. Detective Prestininzi issued the defendant a misdemeanor citation for possession of drug paraphernalia, placed the pipe in an evidence envelope, and secured it in an evidence locker. Approximately one week before trial, Detective Prestininzi discovered that the pipe was missing. During his testimony at trial, Detective Prestininzi was unable to produce the pipe, but drew a picture of it. Officer Barnes testified that the drawing was an accurate depiction of the pipe recovered from the vehicle driven by the defendant.

At trial, the defendant testified that the car he was driving on the day of the offense did not belong to him and that he had come into possession of the vehicle in Nashville that morning. He claimed that the owner of the vehicle, who died approximately five months before the trial, had a drug problem. He also contended that the crack pipe was not his, that he had never seen it before that day, and that he never admitted to the officers that the pipe belonged to him. He testified that he went to the house under surveillance in order to visit a friend. The defendant contended that he was not speeding and explained that the only objects he had in the car were some clothes that were in the trunk. He admitted that he consented to the search and also admitted that he informed the officers that he had a drug problem. He denied, however, having told the officers that he had used

3

drugs the previous day, claiming that his last usage was one or two weeks before his arrest.

Before the trial, the state filed a notice of intent to use evidence under Tenn. Code Ann. § 39-17-424(2), which permits introduction of a defendant's prior drug-related offenses in order to establish that a particular object falls within the definition of drug paraphernalia. The defendant filed a motion in limine requesting that the trial court hold a hearing outside the presence of the jury to determine whether the probative value of evidence of his prior crimes outweighed the danger of unfair prejudice, as prescribed by Tenn. R. Evid. 404(b). The defendant also filed a motion to dismiss based on the missing crack pipe. Both motions were overruled by the trial court.

I

Initially, the defendant contends that the trial court erred by failing to dismiss the case based on the state's failure to preserve evidence. More specifically, he claims that he was prejudiced by the loss of the pipe because he was unable to conduct tests for the presence of cocaine residue. He points out that the absence of residue would have been favorable to his defense. He also argues that the characterization of an item as drug paraphernalia is an issue for the trier of fact and that the absence of the pipe prevented him from pointing out its legitimate uses. See Tenn. Code Ann. § 39-17-424(7). The state argues that the defendant has failed to establish that he was prejudiced by the loss of the pipe.

In the landmark case of Brady v. Maryland, 373 U.S. 83 (1963), the United States Supreme Court ruled that a prosecutor has a duty to furnish exculpatory evidence to the defendant upon request. Exculpatory evidence may pertain to the guilt or innocence of the accused and/or the punishment which may be imposed if the accused is convicted of the crime. State v. Marshall, 845 S.W.2d 228 (Tenn. Crim. App. 1992).

4

Any "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." Brady, 373 U.S. at 87. Thus, the duty to provide arises when the evidence is material, the evidence is favorable for the defense, and a proper request is made by the defendant for the production of the evidence. See United States v. Bagley, 473 U.S. 667 (1985); Strouth v. State, 755 S.W.2d 819, 828 (Tenn. Crim. App. 1986). Even in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about a defendant's guilt. United States v. Agurs, 427 U.S. 97 (1976).

In Arizona v. Youngblood, 488 U.S. 51 (1988), the United States Supreme Court held that a criminal defendant must show bad faith on the part of the state in order to establish a denial of due process for failure to preserve potentially useful evidence. In State v. Ferguson, ___ S.W.2d ___ (Tenn. 1999), where the police lost a videotape of the defendant's field sobriety tests, our supreme court rejected the bad faith requirement articulated in Youngblood. In Ferguson, the defendant argued that the videotape could have supported his claim that he was suffering from a medical condition rather than exhibiting signs of intoxication. The supreme court characterized the issue as follows:

> The analysis of both Brady and Agurs concerns the prosecution's suppression of "plainly exculpatory" evidence. This strikes a sharp contrast to the case under review wherein the existence of the destroyed videotape was known to the defense but where its true nature (exculpatory, inculpatory, or neutral) can never be determined.

Ferguson, slip op. at 4-5.

In Ferguson, our supreme court concluded that the due process principles of the Tennessee Constitution are broader than those enunciated in the United States Constitution and that fundamental fairness, as an element of due process, requires that the state's failure to preserve evidence which could be favorable to the defendant be evaluated in the context of the entire record. The

5

balancing test is based upon the following factors:

> (1) whether the state had a duty to preserve the evidence;
>
> (2) the degree of negligence involved;
>
> (3) the significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
>
> (4) the sufficiency of the other evidence against the defendant.

Ferguson, slip op. at 9-10. If a trial without the lost or destroyed evidence would be unfair, the trial judge may dismiss the charges, provide a jury instruction, or take other steps necessary to protect the defendant's right to a fair trial. Id. at 10. In Ferguson, our supreme court ultimately determined that the defendant had not been deprived of his right to a fair trial based on the loss of the videotape.

The Ferguson factors lead us to conclude that the defendant here was not deprived of his right to a fair trial based upon the loss of the pipe. Initially, the question is whether the state had a duty to preserve the pipe. While the exculpatory nature of the pipe is tenuous, at best, it is our view that the state did have a duty to preserve it. At a minimum, it was material to the preparation the defense.

As to the second factor, there has been no allegation that the state's loss of the evidence was motivated by bad faith. From all appearances, the failure to preserve the evidence was the result of simple negligence.

The third factor addresses the significance of the missing evidence. The defendant argues that he was unable to test the pipe to ascertain whether or not it contained cocaine residue. Presumably, he would contend that if the pipe contained no cocaine residue, it was not actually a crack pipe. He has not, however, presented any evidence of other legitimate uses for the pipe. In our view, the loss of the pipe would not have prevented the defendant from submitting such evidence. He had a full opportunity to testify and to cross examine either of the arresting officers regarding other possible uses of the pipe. Furthermore, the

6

defendant asserted at trial that he did not own the pipe. He claimed that it belonged to the owner of the vehicle. Given this, had the defendant received favorable test results as to the presence of cocaine or had the defendant presented credible alternate explanations, the defense would have benefitted little.

Finally, we must consider the sufficiency of the other convicting evidence. The testimony of Detective Prestininzi and Officer Barnes established that the defendant arrived at a suspected drug house. He entered the home and left within a short time period. The officers found the pipe in the center console beside the driver's seat. Detective Prestininzi testified that the defendant admitted ownership of the crack pipe and conceded that he was addicted to the use of illegal drugs. In our view, this was particularly persuasive testimony which favored the state. We reach the same result here as our supreme court did in <u>Ferguson</u>. The defendant was not deprived of a fair trial due to the state's failure to preserve the pipe.

II

Next, the defendant argues that his prior convictions should not have been allowed into evidence pursuant to Tenn. Code Ann. § 39-17-424(2). He contends that the trial court failed to first balance the probative value of the evidence against the danger of unfair prejudice.

> Tenn. Code Ann. § 39-17-402 defines drug paraphernalia as follows:
>
> "Drug paraphernalia" means all equipment, products and materials of any kind which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance as defined in subdivision (4). "Drug paraphernalia" includes, but is not limited to:
>
> * * *
>
> (C) Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing marijuana, cocaine, hashish, or hashish oil into the human body,

such as:
(i) Metal, acrylic, glass, stone or plastic pipes with or
without screens, permanent screens, hashish heads or
punctured metal bowls . . . .

Tenn. Code Ann. § 39-17-402(12).

To assist in the determination of whether specific items fall within the
above definition of drug paraphernalia, the legislature enacted Tenn. Code Ann. §
39-17-424, which provides in relevant part as follows:

In determining whether a particular object is drug
paraphernalia as defined by § 39-17-402, the court or
other authority making such a determination shall in
addition to all other logically relevant factors consider the
following:
(2) Prior convictions, if any, of the owner or of anyone in
control of the object for violation of any state or federal
law relating to controlled substances . . .

Tenn. Code Ann. § 39-17-424 (emphasis added).

The defendant asserts that evidence of prior convictions submitted
under Tenn. Code Ann. § 39-17-424(2) must satisfy the test for admissibility
articulated in Tenn. R. Evid. 404(b), which provides the following:

Evidence of other crimes, wrongs, or acts is not
admissible to prove the character of a person in order to
show action in conformity with the character trait. It may,
however be admissible for other purposes. The
conditions which must be satisfied before allowing such
evidence are:
(1) The court upon request must hold a hearing outside
the jury's presence;
(2) The court must determine that a material issue exists
other than conduct conforming with a character trait and
must upon request state on the record the material issue,
the ruling, and the reasons for admitting the evidence;
and
(3) The court must exclude the evidence if its probative
value is outweighed by the danger of unfair prejudice.

Tenn. R. Evid. 404(b). The state argues that the mandatory language contained in
Tenn. Code Ann. § 39-17-424(2) which provides that a court "shall" consider
relevant prior convictions exempts such evidence from the mandates of Rule 404(b).

The state provided pretrial notification to the defense of its intent to
introduce into evidence the defendant's two prior convictions for possession of drug
paraphernalia and one prior conviction for simple possession of crack cocaine

pursuant to Tenn. Code Ann. § 39-17-424(2).  In response, the defendant filed a motion in limine asking for the procedural protections afforded by Rule 404(b).  The transcript from the pretrial motions includes the following exchange:

> The State: I think really the only other motion in this case, the State filed the same two motions that it had filed in Mr. Mallard's case that we argued back in the fall.  We have given this notice of intent to use evidence under 39-17-424 . . . .
>
> Defense Counsel: As far as that statute, we did, I think, object the last time.  And I understand the court's position is that the statute is pretty clear as far as being admissible.
>
> The Court: Yes sir.  You want to preserve your same objection.
>
> Defense Counsel: I would like to reserve that objection for appeal, your Honor.
>
> The Court: Sure . . . .

During the trial, the state called Elfreida Young, Rutherford County's Chief Deputy Circuit Court Clerk, to introduce the prior judgments of conviction.  At the conclusion of her testimony the trial court stated as follows:

> [I]n this particular case, because of a statutory requirement under 39-17-424, you can consider this testimony and this evidence here and these convictions as to determine knowledge of the drug paraphernalia, the subject matter of the particular charge.  That's one of the factors that can be considered under that statutory requirement.  And that's the reason it's being allowed . . . .

The statute at issue, Tenn. Code Ann. § 39-17-424, was adopted by the Tennessee legislature in 1989.  No prior cases address the statute.  Rule 404(b) of the Tennessee Rules of Evidence became effective in Tennessee on January 1, 1990.  Therefore, the effective date of the statute pre-dates the Rules of Evidence.  The Advisory Committee Comments indicate that Rule 404(b) was drafted to follow our supreme court's pronouncements in State v. Parton, 694 S.W.2d 299 (Tenn. 1985).  In consequence, the basis for Rule 404(b) pre-dates the statute.  Given the lack of analysis of the statute and its relationship to the Rules of Evidence, we must consider traditional rules of statutory interpretation in resolving any conflict between

9

the statute and Rule 404(b).

The legislature has the authority to establish rules governing the admissibility of evidence. Daughtery v. State, 216 Tenn. 666, 393 S.W.2d 739 (1965); Rust v. Griggs, 172 Tenn. 565, 113 S.W.2d 733 (1938). "The cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end." Browder v. Morris, 975 S.W.2d 308, 311 (Tenn. 1998). If the intent can be determined from the plain language of the statute, we must conclude our inquiry there. Storey v. Bradford Furniture Co., 910 S.W.2d 857 (Tenn. 1995). If the language is ambiguous and does not yield a clear interpretation, we may consult the legislative history for guidance. See Carr. v. Ford, 833 S.W.2d 68 (Tenn. 1992). There is no written legislative history regarding Tenn. Code Ann. § 39-17-424. In our view, however, the plain language of the statute requires consideration of the prior convictions on the issue of whether the pipe fell within the statutory definition of drug paraphernalia. "Courts are restricted to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent." Id. Where the statute is clear in expressing the legislature's intent, there is no need to resort to auxiliary rules of construction. Courts need only enforce the statute as written. The language of the statute at issue is clear and unambiguous in its mandate that "the court or other authority making such a determination shall" consider the prior convictions. Tenn. Code Ann. § 39-17-424 (emphasis added). It was not, therefore, erroneous for the trial court to admit evidence of the defendant's prior drug-related convictions under Tenn. Code Ann. § 39-17-424 without weighing its probative value against its prejudicial effect.

Moreover, it is axiomatic that a specific statute on a particular subject will govern a more general one. State v. Black, 897 S.W.2d 680 (Tenn. 1995). While Rule 404(b) of the Tennessee Rules of Evidence qualifies as a general rule on the admissibility of prior offenses, Tenn. Code Ann. § 39-17-424 specifically authorizes the admission of prior drug offenses when the issue concerns drug

10

paraphernalia.

Accordingly, the judgment of conviction is affirmed.

_____
Gary R. Wade, Presiding Judge

CONCUR:


_____
John H. Peay, Judge


_____
Norma McGee Ogle, Judge