SAN ANTONIO RETAIL GROCERS, INCORPORATED, V.
W. W. LAFFERTY

No. A-6012. Decided January 9, 1957.
Rehearing overruled February 13, 1957.
(297 S.W. 2d Series 813).

Bruce Waitz, of San Antonio, and Dan Moody, of Austin, for appellant.

Seipel & Seipel, and William Seipel, Dodson, Duke, Branch & Davis, Greathouse & Zuercher, Chas. W. Duke and Clifford Davis, all of San Antonio, Fulbright, Crooker, Freeman, Bates

& *Jaworski, Robert W. Welsch, Jr.* and *Leon Jaworski,* all of Houston, and *Small, Small & Craig,* of Austin, for appellee.

MR. JUSTICE CALVERT delivered the opinion of the Court.

This is a direct appeal from a judgment of the District Court of the 73rd Judicial District, Bexar County. Appellant was plaintiff and appellee was defendant in the trial court.

Appellant sought a judgment restraining and enjoining appellee from further violations of Article 1111m, Vernon's Texas Penal Code (Acts 1955, 54th Leg., p. 1622, ch. 524), known as the "Sales Limitation Act." By way of defense to the suit appellee attacked the constitutionality of the Act on several grounds, one of which was that it applied only to grocery stores and thus established an arbitrary and unreasonable classification and resulted in denying to the defendant the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States and Sections 3 and 19 of Article 1 of the Constitution of the State of Texas. The trial court sustained the foregoing contention, declared the Act unconstitutional and denied to the appellant any injunctive relief.

Article 1111m, V.T.P.C., contains eight sections. Section 1 provides that the Act shall be known as the "Sales Limitation Act." Section 2 contains eight paragraphs, lettered from (a) to (h), inclusive. Paragraph (a) defines the term "cost basis" as applied to merchandise offered for sale. Paragraph (b) provides that when two or more items are offered for sale at one price each item shall be regarded as being offered for sale and the cost basis of each shall be determined according to the formula set out in paragraph (a). Paragraph (c) defines the term "replacement costs," paragraph (d) the terms "sell at retail," "sales at retail," and "retail sale," paragraph (e) the terms, "sell at wholesale," "sales at wholesale," and "wholesale sales," paragraph (f) the term "retailer," and paragraph (g) the term "wholesaler." Paragraph (h) reads: "This Act shall apply only to grocery stores."

Section 3 is the heart of the Act. It reads as follows:

"Sec. 3. No offer to sell any merchandise, however expressed or communicated, and no sale of any merchandise shall hereafter be made by any retailer or wholesaler at a price which is lower than the cost of same to the seller thereof as

herein defined if the number of units of said merchandise that may be purchased by any customer is limited or curtailed to any quantity less than the entire supply of said article on hand or if the right to refuse to sell said merchandise to any willing purchaser thereof is retained or exercised by the prospective seller thereof. Any merchandise so offered for sale at a price below cost as herein defined shall be prominently displayed in the outlet offering same in sufficient quantities to meet any usual and reasonably expectable demand therefor."

Section 4 makes any retailer or wholesaler who violates the Act guilty of a misdemeanor and subject to a fine not exceeding Five Hundred Dollars. Section 5 authorizes the type of injunctive relief sought in this case. It provides that a suit for injunction may be maintained by anyone refused the right to purchase any quantity of merchandise offered for sale at a price below the seller's cost basis. Section 6 excepts certain transactions, not relevant here, from the provisions of the Act. Section 7 excepts sales made in good faith to meet the price of a competitor. Section 8 requires defendants and witnesses to testify in injunction proceedings and grants to such defendants and witnesses immunity from criminal prosecution.

On the trial of the case it was stipulated that at all relevant times appellee owned and operated a store in San Antonio, Texas, known as "Kelly Food Center" at which he sold at retail "goods, wares and merchandise consisting of canned, frozen, cured, packaged and fresh meats, vegetables and fruits; bread, cake, cookies and other bakery goods; milk, butter, eggs, cheese, ice cream, merlorine and other dairy products, oleomargarine, condiments, flour and soft drinks; soap, detergents and other cleaning materials; cigars, cigarettes, tobacco and beer; toothpaste, face powder, alcohol, cosmetics, first aid items such as bandages, mercurochrome, aspirin and other similar proprietaries commonly contained in drug departments; fertilizers, seeds and other garden equipment, supplies and tools." The parties also stipulated that on various days in the month of April 1956, the appellee offered for sale and sold at Kelly Food Center at less than his cost basis Tide and Oxydol, detergents, Snowdrift shortening, Parkay margarine, Blue Bonnett margarine, Meadowlake margarine, Folger's coffee and Pioneer flour, and that he limited and curtailed the quantity of each such item of merchandise that might be purchased by a customer to less than his entire supply of said item on hand and refused to sell to appellant's agents who were willing and able to purchase the same.

■ Appellant argues that in making the terms and provisions of the Act applicable to grocery stores only the Legislature but exercised its constitutional right and power to create a class for legislative purposes, and that in the absence of a showing that the classification is arbitrary and unreasonable the legislation must be held constitutional. We consider, then, whether there is any reasonable basis for applying the restrictive provisions of the Act to grocery stores only. We recognize that the test is whether there is any basis for the classification which could have seemed reasonable to the Legislature. Clark v. Finley, 93 Texas 171, 54 S.W. 343, 346; Gerard v. Smith, Texas Civ. App., 52 S.W. 2d 347, 350, writ refused.

The legislation is obviously intended to discourage, and indirectly to prohibit, the practice of attracting customers through the sale of what is generally referred to as "loss leaders." It is to be noted that while the restrictions of the Act apply to grocery stores only they are not limited to the sale of groceries. On the contrary they apply to sales of all merchandise. Owners of grocery stores are thus to suffer the burdens and the penalties of the Act if they offer to sell any merchandise at less than their cost basis while owners of other than grocery stores, competing in the sale of many identical items of merchandise, may sell at less than their cost basis with impunity. For example, a grocery store may not sell Bayer's aspirin at less than its cost basis while a drug store occupying an adjoining building or one across the street, with the same cost basis, can advertise and sell the item at any price it wishes.

■ The Act contains no definition of a grocery store. For opinion purposes we accept the statement of appellant's counsel, made in oral argument, that any store which sells groceries is a grocery store within the meaning of the Act. By that test Joske's Department Store of San Antonio is a grocery store because the record shows that Joske's sells groceries. The far-reaching impact of the discriminatory features of the Act is brought into bold relief when we consider that Joske's could not sell clothing below its cost basis without incurring the penalties of the Act while clothing stores all around and near Joske's, having no grocery departments, could sell the same brand, style and make of clothing at any desired price without suffering its penalties. It will thus be seen that the Act creates two classes of stores: those which sell groceries and must suffer the burdens and penalties it provides in the sale of all merchandise, and those which sell no groceries and are exempt from its burdens and penalties in the sale of all merchandise.

Discrimination against grocery stores is too plain to admit of argument. Special privileges to other types of stores are obvious. But the mere fact that Act discriminates against grocery stores does not render it unconstitutional. Before we may strike it down it must appear that there is no reasonable relationship between the classes created and the purposes to be accomplished or the evils to be prevented. Dodgen v. Depuglio, 146 Texas 538, 209 S.W. 2d 588, 594; Texas Co. v. Stephens, 100 Texas 628, 103 S.W. 481, 485.

The precise evil at which the Act is directed does not clearly appear from its terms. The emergency clause recites that an emergency is created by the fact that "the State has no law to protect producers, owners, distributors, dealers and consumers in the ordinary purchase and sale of commodities." In so far as the purpose of the Act may be the protection of the named groups "in the ordinary purchase and sale of commodities," the classes created bear no reasonable relationship thereto. If the groups are to be protected against evils arising from "the purchase and sale of *commodities*" they can only be protected by applying the restriction of the Act to all who buy and sell commodities — grocery stores and other than grocery stores alike.

Appellant does not suggest the particular evils from which the named groups are to be protected, unless such a suggestion may be found in the following quotation taken from appellant's brief: "The issue here is may the state prohibit the sale of groceries below cost in an attempt to injure his competitor. * * * May not the State of Texas * * * attempt to protect the wholesome quality of the foods sold in grocery stores by prohibiting the 'loss leader' practice of offering groceries for sale?" The quoted language seems to assume, erroneously as we think, that the Act prohibits the sale of groceries only at less than cost. If that were the true interpretation of the Act and if all stores selling groceries are properly classed as grocery stores, conceivably its validity might be ruled by such cases as Nebbia v. New York, 291 U.S. 502, 78 L. Ed. 940, 54 Sup. Ct. 505, upholding the validity of New York legislation fixing minimum prices on milk, Highland Farms Dairy, Inc. v. Agnew, 300 U.S. 608, 57 Sup. Ct. 549, 81 L. Ed. 835, upholding the validity of Virginia legislation fixing minimum prices on milk and cream, and May's Drug Stores v. State Tax Commission, 242 Iowa 319, 45 N.W. 2d 245, upholding the validity of Iowa legislation fixing minimum prices on cigarettes. As to that we need not decide for we do not regard it as the true interpretation of the Act.

■ If the object of the legislation is to protect one merchant from injury through the loss of customers to a competitor who runs "loss leaders" sales, that object can hardly find fulfillment in an Act which prohibits the sale of "loss leaders" by grocery stores only. The Act can only result in injury to grocery stores through loss of customers to other types of stores, none of which are prohibited from selling "loss leaders."

There are no Texas cases in point or on the subject. Cases cited by appellant bearing on the various legal problems arising out of this general type of legislation and held to be valid by courts of other jurisdictions fall into two categories: those involving legislation fixing minimum prices on particular products and items of merchandise, and those prohibiting the sale by all businesses of all products and merchandise at less than cost. Into the first category fall the Nebbia, Agnew and May's Drug Stores cases heretofore noticed. Into the second category fall McElhone v. Geror, 207 Minn. 580, 292 N.W. 414; McIntire v. Borofsky, 95 N.H. 174, 59 Atl. 2d 471; Rust v. Griggs, 172 Tenn. 565, 113 S.W. 2d 733; Hill v. Kusy, 150 Neb. 653, 35 N.W. 2d 594; State v. Walgreen Drug Co., 57 Ariz. 308, 113 Pac. 2d 650; Moore v. Northern Kentucky Independent Fruit Dealers, 286 Ky. 24, 149 S.W. 2d 755; Wholesale Tobacco Dealers v. National Candy & Tobacco Co., 11 Cal. 2d 634, 82 Pac. 2d 3, 118 A.L.R. 486; Mering v. Yolo Grocery & Meat Market (Cal. App.) 127 Pac. 2d 985; Fournier v. Troianello, 332 Mass. 636, 127 N.E. 2d 167; State v. Ross, 259 Wis. 379, 48 N.W. 2d 460; Carroll v. Schwartz, 127 Conn. 126, 14 Atl. 2d 754; Associated Merchants of Montana v. Ormesher, 107 Mont. 530, 86 Pac. 2d 1031; State v. Langley, 53 Wyo. 332, 84 Pac. 2d 767 and State v. Sears, 4 Wash. 2d 200, 103 Pac. 2d 337. The instant case falls into neither category.

We con conceive of no reasonable basis for applying the provisions of the Act to grocery stores and exempting other stores therefrom. Neither can we conceive of any basis therefor which could have seemed reasonable to the legislature. We agree with the conclusion of the trial court that the Act is unconstitutional.

The judgment of the trial court is affirmed.

Associate Justice Norvell not sitting.

Opinion delivered January 9, 1957.

Rehearing overruled February 13, 1957.