The TEXAS BOARD OF PRIVATE IN-
VESTIGATORS AND PRIVATE SE-
CURITY AGENCIES, Clema Sanders,
Executive Director, Appellants,

v.

The BEXAR COUNTY SHERIFF'S RE-
SERVE, an Association and Jimmy
Hasslocher, President, Appellee.

No. 16167.

Court of Civil Appeals of Texas,
San Antonio.

July 25, 1979.

Rehearing Denied Sept. 25, 1979.

John L. Hill, Atty. Gen. of Texas, David
M. Kendall, Jr., First Asst. Atty. Gen., Rob-
ert Steve Bickerstaff, Jr., Charles J. Mad-
dox, Jr., Asst. Attys. Gen., Austin, for ap-
pellants.

Galen Gilbert, San Antonio, for appellee.

OPINION

MURRAY, Justice.

This is a suit brought by the Bexar Coun-
ty Sheriff's Reserve and its president, Jim-
my Hasslocher, against the Texas Board of
Private Investigators and Private Security
Agencies, and against its executive director,
Clema Sanders, for injunctive relief and for
a declaratory judgment that Section
3(a)(3)(d) of Article 4413(29bb), Texas Re-
vised Civil Statutes, is unconstitutional.
Appellants will hereinafter be referred to
as "the Board," and appellees will be re-
ferred to by the name, "Reserves." Article
4413 (29bb) of the Texas Revised Civil Stat-
utes will be referred to as "the Act." The
224th District Court of Bexar County, Tex-
as, declared Section 3(a)(3)(d) of the Act
unconstitutional and permanently enjoined
the Board from enforcing that section.
From this judgment the Board duly per-
fected its appeal to this court.

Under the Act the Board is primarily
responsible for regulating the investigator
and private security industry in the State of
Texas. The Board is empowered to license
investigators and private security agencies
and to issue security officer commissions.
A security officer commission entitles an
individual to carry a handgun, under cer-
tain conditions, while engaged in private
security guard endeavors.

Section 19(a) of the Act provides that it
shall be unlawful for an individual em-
ployed as a private security officer to carry
a handgun while performing his duties un-

less he has been issued a security officer commission by the Board. Section 3(a)(3) of the Act provides that Section 19(a) does not apply to full-time peace officers, but does apply to reserve peace officers. Therefore, a reserve peace officer is required to obtain a security officer commission before he can carry a handgun while employed as a private security officer, and a full-time peace officer is not required to obtain a security officer commission.

Section 3(a)(3) reads as follows:

This Act does not apply to:

. . . . .

(3) a person who has full-time employment as a peace officer as defined by Article 2.12, Code of Criminal Procedure, 1965, who receives compensation for private employment on an individual or an independent contractor basis as a patrolman, guard, or watchman if such person is:

(a) employed in an employee-employer relationship; or

(b) employed on an individual contractual basis

(c) not in the employ of another peace officer; and

(d) *not a reserve peace officer*;

Tex.Rev.Civ.Stat.Ann. art. 4413(29bb), § 3(a)(3) (Vernon Supp. 1978–1979) (emphasis added).

Article 6869.1, Texas Revised Civil Statutes, permits the Commissioners Court of any county in the State of Texas to authorize the sheriff or constable of the county to appoint reserve peace officers. Reserve peace officers serve without compensation at the discretion of the sheriff or constable. While on active duty, they are vested with the same rights, privileges, obligations, and duties of any other peace officer of the State of Texas.

The Reserves allege that Section 3(a)(3)(d) of the Act, which does not exclude reserve peace officers, violates the equal protection clause of the fourteenth amendment of the United States Constitution because full-time peace officers are exempt from the Act. The Board contends that the legislature properly noted the differences between regular and reserve peace officers and that these differences clearly form a rational basis for any dissimilarity in treatment under the Act. Both parties agree that the proper test to determine the constitutionality of the Act is the rational basis test. The United States Supreme Court in *New Orleans v. Dukes*, 427 U.S. 297, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976), stated:

Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest. . . . In short, the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines . . . .

427 U.S. at 303, 96 S.Ct. at 2517.

Chief Justice John Marshall, seven years after his opinion in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803), which established the doctrine of judicial review by holding that the Supreme Court of the United States could declare an Act of Congress invalid, wrote on the topic of judicial review as follows:

The question, whether a law be void for its repugnancy to the constitution, is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other.

*Fletcher v. Peck,* 10 U.S. (6 Cranch) 87, 128, 3 L.Ed. 162 (1809).

In considering whether there is a rational basis for applying the Act to reserve peace officers and exempting regular peace officers, the test is whether there is any basis for the classification which could have seemed reasonable to the legislature. *San Antonio Retail Grocers v. Lafferty,* 156 Tex. 574, 297 S.W.2d 813 (1957); *Gerard v. Smith,* 52 S.W.2d 347 (Tex.Civ.App.—El Paso 1932, writ ref'd). The Act is obviously intended by the legislature to insure the competency and knowledge of persons allowed to carry handguns in public places. The Board contends that there are three major distinctions between regular and reserve peace officers, which provide a rational basis for Section 3(a)(3)(d). These distinctions are in the nature of training, supervision, and experience. We agree.

In reference to the training distinction, the Texas Commission of Law Enforcement Officers Standards and Education, pursuant to Sections 2(b) and 2A of Article 4413(29aa), Texas Revised Civil Statutes, has promulgated certain minimum training standards for regular and reserve peace officers. The minimum training required for certification as a regular peace officer is 240 hours, but the minimum required for certification for reserve peace officer is only seventy hours. Of the required minimum training hours, reserve peace officers must complete ten hours of training in firearms, but regular peace officers must complete sixteen hours of training in firearms. The legislature is presumed to have been cognizant of the disparity in the amount of training required.

Concerning the supervision distinction, it is undisputed that the Reserves are under the direct supervision of a regular peace officer ninety-nine percent of the time when called to active duty by the sheriff or constable. While on active duty, the Reserves are allowed to carry handguns and are unaffected by the provisions of the Act. It is only when reserve peace officers are engaged in a private enterprise without direct supervision from regular peace officers

that the Act applies and requires them to have a security officer commission from the Board.

The third major distinction between regular and reserve peace officers lies in the area of experience. Regular peace officers generally pursue law enforcement as a full-time vocation. Reserve peace officers serve without pay and devote a significantly smaller amount of time to the practice of law enforcement. It is conceivable that a reserve peace officer might never actually be called to serve on active duty, and we must assume that the legislature was also cognizant of this disparity in experience.

These distinctions between regular and reserve peace officers clearly form a rational basis for the reserve peace officers to be included under the provisions of the Act.

The judgment of the trial court is reversed and rendered that the statute is constitutional, and the injunction is dissolved.