

# The Attorney General of Texas

July 14, 1981

MARK WHITE
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

701 Commerce, Suite 200
Dallas, TX. 75202
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employer

Honorable Russell Harding
Executive Director
Texas Motor Vehicle Commission
P. O. Box 2293
Austin, Texas 78768

Opinion No. MW-356

Re: Constitutionality of article 4413(36), section 5.03, V.T.C.S., prohibiting automobile brokers

Dear Mr. Harding:

You request our opinion advising you whether section 5.03 of the Texas Motor Vehicle Commission Code is a valid exercise of the police power of the State of Texas, or whether such a prohibition violates the Texas Constitution or the Constitution of the United States.

The Texas Motor Vehicle Commission Code, V.T.C.S. article 4413(36), section 1.03(10) defines a "Broker" as follows:

> 'Broker' means a person who, for a fee, commission, or other valuable consideration, arranges or offers to arrange a transaction involving the sale, for purposes other than resale, of a new motor vehicle, and who is not:
>
> (A) a dealer or a bona fide agent or employee of a dealer;
> (B) a representative or a bona fide agent or employee of a representative;
> (C) a distributor or bona fide agent or employee of a distributor; or
> (D) at any point in the transaction the bona fide owner of the vehicle involved in the transaction.

Section 5.03 of the code prohibits people from acting as brokers in Texas after September 1, 1979. Since any contracts entered into prior to September 1, 1979 would now almost certainly be filled, we need not address any effect the statute might have on contracts executed before the effective date of the statute.

We are given to understand that a new car broker acts as a purchasing agent for consumers. We are told that in the usual brokered transaction, the

broker first obtains the exact specifications of the car the customer wishes to buy, takes a deposit, and then contacts - either directly or through a brokerage service - a franchised dealer of the type automobile desired who has previously agreed to sell his car through the broker at a discount.  When the ordered vehicle arrives at the dealer's place of business from the manufacturer or distributor, the broker is notified, and the broker's client then picks up the car at the dealership, purchasing it directly from the franchised dealer at the discounted price.  From that point, the transaction is like any other new car purchase, with the same manufacturer's warranty and service obligations obtaining that apply to non-brokered transactions.   The consumer purchases at a discount; the broker gets a commission; and the dealer makes a reduced profit.  At no time does the broker own, or take title to, the automobile made the subject of the transaction.

It appears that before the new law, brokers, their firms, and dealers had to cooperate to sell a consumer a new car, but until the time of delivery to the dealership, the consumer only dealt with the broker or his firm.   This necessarily limited the consumer's recourse in the case of dissatisfaction.  Presumably the brokers and dealers cooperated because it was economically advantageous for both of them.  If dealers ever wanted to do away with the competition of brokers they could refuse to deal with them.   None of this is changed by the new law.   If it is economically advantageous to deal with brokers, dealers can hire the brokers as employees for the same type of transactions as transpired in the past.  Only now dealers will be involved as employers from the beginning of the transaction, and consumers will have the added protection of dealing with the employee of a dealer.   If it is not economically advantageous to deal with brokers, they will not be hired; just as in the past they would not have been used.   Brokers cannot exist without the "hiring" by someone in the distributor - representative - dealer chain.  Whether this hiring be for a term, payable per transaction, or simply per transaction, the only effect of the new law is to aid and protect the consumer by involving the dealer, and consequently his statutory and financial obligations, throughout the transaction.

Generally, the police power is regarded as a grant of authority from the people to their government agents for the protection of the health, safety, comfort and welfare of the public.  Obviously this power must include the authority to regulate the conduct of any business that affects the welfare of the public.  See generally Ferguson v. Skrupa, 372 U.S. 762 (1963).  The sale of new cars affects the welfare of the public, and the regulation of these sales is a valid exercise of the police power if it does not deprive people of due process or equal protection under the federal or state constitutions.   Since the new law does not change the ability of people to act as brokers, in concert with those who manufacture and distribute cars, it should not deprive anyone of due process or equal protection.

A presumption of constitutionality attaches to every state enactment.  Alaska Packers Association v. Industrial Accident Commission, 294 U.S. 532 (1935).

> The party claiming legislation to be invalid as constituting a
> deprivation of property without due process carries a heavy

> burden. He must establish such invalidity 'clearly or beyond a reasonable doubt, and must overcome, by facts judicially known or proved, not only the evidence sustaining constitutionality, but any state of facts which can be reasonably conceived to sustain it.' (Emphasis added) 16 C.J.S. Constitutional Law §99, at p. 407.

State ex rel. Pan Am. Production Co. v. Texas City, 295 S.W.2d 697 (Tex. Civ. App. - Galveston 1956), aff'd, 303 S.W.2d 780 (Tex. 1957), appeal dismissed, 355 U.S. 603 (1958). Where an economic regulation is challenged under the Fourteenth Amendment on substantive due process grounds, the regulation will not be overturned as long as "there is an evil at hand for correction, and... it might be thought that the particular legislative measure was a rational way to correct it." Williamson v. Lee Optical Co., 348 U.S. 483, 488 (1955). Even if no complaints had been filed against the brokers, the legislation would not necessarily be invalid. The state may legitimately legislate against problems which have yet to manifest themselves as long as the problem is at least rationally conceivable. Olsen v. Nebraska, 313 U.S. 236, 246-47 (1941). If the economic regulation is challenged on equal protection grounds, i.e., unaffiliated brokers may not sell new cars but affiliated brokers may, it still enjoys a presumption of constitutionality. "Unless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." City of New Orleans v. Dukes, 427 U.S. 297, 303 (1976). Besides, all brokers must be affiliated with a manufacturer, representative or dealer to obtain new cars.

The purpose of the Texas Motor Vehicle Commission Code is to "insure a sound system of distributing and selling new [cars]... and to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens." V.T.C.S. art. 4413(36), §1.02. This is a valid purpose for invoking the police power. Detroit Automotive Purchasing Services, Inc. v. Lee, 463 F. Supp. 954, 968 (D. Md. 1978). If the prohibition of unaffiliated new car brokers rationally relates to this purpose, the legislation will withstand constitutional attacks based on due process rights and equal protection rights. It seems unquestionable that requiring new cars to be sold by licensed dealers or their agents or employees relates to the protection of the car buying public. If it is "rationally conceivable" that this legislation will protect automobile consumers, then it is within the police power to so legislate. Olsen v. Nebraska, supra, at 246-247. The judiciary will not sit as a super legislature to judge the wisdom or desirability of this legislative policy determination. City of New Orleans v. Dukes, supra, at 303.

The Texas Constitution also classifies the right to earn a living as a property right of which one cannot be deprived without due process of law. Smith v. Decker, 312 S.W.2d 632 (Tex. 1958); See Falfurrias Creamery Company v. City of Laredo, 276 S.W. 2d 351 (Tex. Civ. App. - San Antonio 1955, writ ref'd n.r.e.). If the new code, purporting to "insure a sound system of distributing and selling new [cars]... and to prevent frauds, unfair practices, discriminations, impositions, and other abuses of our citizens," bears no substantial relationship to these objects, the statute violates the

due process clause of the Texas Constitution, article I, section 19. Texas State Board of Pharmacy v. Gibson's Discount Center, Inc., 541 S.W.2d 884, 887 (Tex. Civ. App. – Austin 1976, writ ref'd n.r.e.). Texas courts have been willing to consider the wisdom of legislation; however, in this situation, it appears as though the formalizing of the contractual relationship between dealers and brokers will bear a substantial relationship to the prevention of fraud and abuses of Texas citizens.

Article I, section 3 of the Texas Constitution also guarantees equality of rights to all persons, but the mere fact that the new motor vehicle code might appear to descriminate against certain people who want to sell new cars does not render it unconstitutional. San Antonio Retail Grocers v. Lafferty, 297 S.W.2d 813 (Tex. 1957). Generally, the legislature is empowered to make classifications and exemptions which are not arbitrary and unreasonable. Watts v. Mann, 187 S.W.2d 917 (Tex. Civ. App. – Austin 1945, writ ref'd). In determining whether a classification is arbitrary and unreasonable, the Texas Supreme Court has held that the test is "whether there is any basis for the classification which could have seemed reasonable" to the legislature in making such a distinction. Lafferty, supra, at 815. As the broker is not precluded from engaging in his occupation, it does not seem unreasonable to protect the consumer by tying the broker to the dealer contractually.

You have also requested our opinion advising you whether a new car becomes "used" if a person purchases a new car ordered by a broker, registers and titles the vehicle in its own name in the State of Missouri, and then drives the car to Texas for delivery and transfer of title to the broker. The broker would then deliver the automobile and title to the buyer.

The Texas Motor Vehicle Commission Code defines a new motor vehicle as one "which has not been the subject of a 'retail sale' as defined in Article 6.03(B), Title 122A, Taxation-General, Revised Civil Statutes of Texas, 1925, as amended." V.T.C.S. art. 4413(36), §1.03(2). Article 6.03(B) defines a retail sale as including "all sales of motor vehicles except those whereby the purchaser acquires a motor vehicle for the exclusive purpose of resale and not for use." It does not appear that either of the first two "sales" contemplated in the above method of operation would constitute a retail sale; therefore, for purposes of the Texas Motor Vehicle Commission, the motor vehicle would still be a new motor vehicle when transferred to the buyer.

There is, of course, an exception for persons who are bona fide owners of the vehicles involved in the transaction. V.T.C.S. art. 4413(36), §1.03(10D). While there may be instances where a person who otherwise would be a broker except for the fact that he falls under this exception, we believe that when the broker acts as the agent of the ultimate purchaser, the broker cannot be classified as a bona fide owner within the meaning of section 1.03(10).

## SUMMARY

The State of Texas has a legitimate interest in protecting automobile consumers and in regulating the sale of new motor

vehicles. The Texas Motor Vehicle Commission Code rationally implements this protection and regulation without invidious discrimination, and is therefore constitutionally permissible. The sale of a new motor vehicle for the exclusive purpose of resale does not change the classification of the vehicle from a new motor vehicle for the purposes of the Texas Motor Vehicle Commission Code. One who is not an agent for the ultimate purchaser, but a bona fide owner of a new car, will not be classified as a broker under the Texas Motor Vehicle Commission Code.

Very truly yours,

MARK WHITE
Attorney General of Texas

JOHN W. FAINTER, JR.
First Assistant Attorney General

RICHARD E. GRAY III
Executive Assistant Attorney General

Prepared by Peter Nolan
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Susan Garrison, Acting Chairman
Jon Bible
Peter Nolan