Adolfo GARAY, Francisco Galvan, Carlos Rodriguez, Andrea L. Green, Appellants,

v.

The STATE of Texas, Appellee.

Nos. 01–94–00923–CR to 01–94–00926–CR.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 2, 1997.

Rehearing Overruled Feb. 24, 1997.

Discretionary Review Refused June 4, 1997.

Armando Lopez, Houston, for Appellants.

John B. Holmes, Houston, for Appellee.

Before SMITH,[1] DRAUGHN[2] and DUGGAN,[3] JJ.

1. The Honorable Jack B. Smith, retired Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

2. The Honorable Joseph Draughn, former Justice, Court of Appeals, Fourteenth District of Texas at Houston, sitting by assignment.

3. The Honorable Lee Duggan, retired Justice, First District of Texas at Houston, sitting by assignment.

## OPINION

DUGGAN, Justice (Retired).

Appellants were each convicted of a class A misdemeanor offense under the Private Investigators and Private Security Agencies Act (the Act).[4] We affirm.

The pertinent section of the Act forbids a person employed as a security officer from carrying a firearm while performing his duties as a security officer "if the [Board] has not issued him a security officer commission under this section." Section 3(a)(3) of the Act exempts from the requirement of a security officer commission a person who has full time employment as a peace officer if the officer:

> (D) works as a peace officer on the average of at least 32 hours a week, is compensated by the state or a political subdivision of the state at the rate of minimum wage or higher, and is entitled to all employee benefits offered to a peace officer by the state or political subdivision.

Art. 4413(29bb) § 3(a)(3)(D).

Each appellant was a certified peace officer who was licensed under the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE).[5] However, each worked as a volunteer or on a limited hour basis for the law enforcement agency with which he was affiliated, and each used his peace officer status to obtain "extra job" employment in the private security field without being licensed under the Act.

The four appellants' cases were consolidated for trial and motions to quash the informations were denied. Each appellant pleaded guilty and was assessed 30 days in jail probated, fined $100, and required to pay restitution for witness expenses. These joint appeals follow.

In four points of error, appellants urge that the trial court erred in refusing to grant their motions to quash the informations.

They argue that section 3(a)(3) of the Act is unconstitutional because it violates the "unity of subject" requirements of the Texas Constitution,[6] the Equal Protection Clause of the Texas and United States Constitutions,[7] and the due course of law provision of the Texas Constitution.[8] Additionally, they argue that section 3(a)(3) is vague and overbroad. At oral argument, appellants waived a fifth point of error complaining of selective enforcement of the Act.

## Background

At the time of his arrest, appellant Adolfo Garay's employment as a commissioned peace officer was as a Deputy City Marshal for the City of Woodbranch Village, in Montgomery County. Garay's employment required him to work a minimum of one ten-hour shift per week at the City Marshal's Office on a voluntary basis without pay. On May 30, 1993, Garay was arrested while working security at a flea market in Harris County; he was wearing his peace officer's uniform and firearm at the time of the arrest.

Appellant Francisco Galvan's employment as a commissioned peace officer as a Deputy Constable for Harris County Precinct Six. As such, he was required to work 32 to 50 hours per month, and was paid for four hours per month as a peace officer. Galvan was arrested in August 1993 while directing traffic as an independent contractor; he was carrying a firearm at the time of the arrest. Galvan acknowledged that he knew he was in violation of the elected Precinct Six Constable's orders, and would be arrested if caught directing traffic.

Appellant Carlos Rodriguez's commissioned peace officer work was as a non-paid volunteer Deputy Constable for Harris County Precinct Six, working 15 to 30 hours per week. Rodriguez was arrested on September 3, 1993, while working as a construction project flagman on a street corner in Harris County. At the time of his arrest, Rodriguez

---

4. TEX.REV.CIV. STAT. ANN. art. 4413(29bb) § 19(a)(1) (Vernon Supp.1995).

5. TEX.REV.CIV. STAT. ANN. art. 4413(29aa) (Vernon Supp.1995).

6. TEX. CONST. art. III, § 35.

7. TEX. CONST. art. I, § 3; U.S. CONST., amend. 15.

8. TEX. CONST. art. I, § 19.

was wearing his peace officer uniform and firearm. Rodriguez admitted that when he went to work for Precinct Six, he was required to sign a statement acknowledging that he would be subject to arrest if he worked extra jobs without first obtaining a commission as a private security officer.

Appellant Andrea L. Green also worked for Precinct Six as a non-paid volunteer. Green was arrested on March 22, 1994, while working traffic control at a construction site wearing a generic uniform and firearm. A full-time paid Precinct Six deputy, who worked with Precinct Six's volunteers, testified that it was made clear when Green joined the precinct's volunteers that she was not exempt from the Private Security Act and was not to work paid "extra" jobs.

### Point of Error One

In point of error one, appellants contend the Act violates article III, section 35(a) of the Texas Constitution because it does not satisfy the "unity of subject" requirement. Article III, section 35(a) provides:

> No bill (except general appropriation bills, which may embrace the various subjects and accounts, for and on account of which moneys are appropriated) shall contain more than one subject.

TEX. CONST. art. III, § 35(a). This "unity of subject" provision is designed "to prevent log-rolling, i.e., the inclusion in a bill of several subjects having no connection with each other in order to create a combination of various interests in support of the whole bill." *LeCroy v. Hanlon,* 713 S.W.2d 335, 337 (Tex.1986).

When faced with a constitutional challenge, we begin with a presumption of statutory validity, and the burden is upon the challenger to establish that the statute is unconstitutional. *Robinson v. Hill,* 507 S.W.2d 521, 524 (Tex.1974). The statute under attack will be liberally construed in favor of constitutionality. *Id.*

A statute satisfies the unity of subject requirement if its provisions "relate directly or indirectly, to the same general subject, have a mutual connection, and are not foreign to the subject expressed in the title." *Id.* at 525; *Smith v. Smith,* 720 S.W.2d 586, 597 (Tex.App.—Houston [1st Dist.] 1986, no pet.). The unity of subject requirement is met even if the statute contains numerous provisions, however diverse, as long as these provisions relate directly or indirectly to the same general subject and have a mutual connection. *LeCroy,* 713 S.W.2d at 337; *Dudley v. State,* 730 S.W.2d 51, 53 (Tex.App.—Houston [14th Dist.] 1987, no pet.).

Section 3(a)(3) of the Act exempts from its coverage a person who has "full-time employment as a peace officer." [9] Thus, a part-time employed peace officer must adhere to the provisions of the Act in order to legally pursue private security employment. Appellants contend that the "full-time employment" language creates a distinction among *peace officers,* i.e., full-time or part-time. By regulating peace officers, they urge the 1971 amendment to the Act violates the constitution's "unity of subject" provision by introducing matters unrelated to the subject matter of the Act, i.e., the regulation of the *private security industry personnel.*

The Act originally was enacted in 1969 to regulate the private security industry. [10] In the same year, the legislature enacted a separate statute, Article 4413(29aa), [11] creating

---

**9.** The relevant provisions of Section 3 provide:
Sec. 3. (a) This Act does not apply to:
(3) a person who has full-time employment as a peace officer as defined by Article 2.12, Code of Criminal Procedure, who receives compensation for private employment on an individual or an independent contractor basis as a patrolman, guard, or watchman if such person is:
(a) employed in an employee-employer relationship; or
(b) employed on an individual contractual basis; or
(c) not in the employ of another peace officer.

TEX.REV.CIV. STAT. ANN. art. 4413(29bb) § 3(a)(3) (Vernon 1995).

**10.** The 1969 Act was titled:
> The Private Detectives, Private Investigators, Private Patrolmen, Private Guards and Managers Act, Chapter 610, Acts of the 61st Legislature, Regular Session, 1969, Article 4413 (29bb), Vernon's Annotated Civil Statutes.

**11.** TEX.REV.CIV. STAT. ANN. art. 4413 (29aa) (Vernon 1995).

the Texas Commission on Law Enforcement Officer Standards and Education (TCLEOSE) to regulate and set training, testing, and licensing standards for peace officers (the TCLEOSE Statute). In 1971, the legislature amended the Act to exempt from its coverage a person who has "full-time employment as a peace officer." [12]

Appellants argue that because the TCLEOSE Statute governs peace officers, and the quoted provisions of the Act affect some peace officers, the Act deals with multiple subjects. However, the test of "unity of subject" is not whether a provision affects persons or groups regulated elsewhere, but whether the provisions relate directly or indirectly to the same general subject matter as the act in which it is included. *LeCroy*, 713 S.W.2d at 337.

Appellants' arguments emphasize the undisputedly higher levels of education and training required for peace officers than for private security officers. Appellants also argue that the amendment of section 3(a)(3) was a result of lobbying efforts to corner the private security market. Neither argument is relevant to the violation of the "unity of subject" provision of the Texas Constitution.

The provisions of section 3(a)(3) relate directly to the general subject matter of the statute as expressed in the senate bill caption.[13] Whether persons are to be included or excluded from regulation is directly related to the regulatory subject matter of the statute. The statute is clearly intended to regulate the private security industry.

■ Appellants argue that the caption of the 1971 bill does not provide adequate notice that other subject matter unrelated to the private security industry is included. Even if the caption is deficient is some way, we no longer have the power to declare a legislative act unconstitutional due solely to a defect in its caption. TEX. CONST. art. III, § 35(c); *see Baggett v. State*, 722 S.W.2d 700, 702 (Tex.Crim.App.1987); *Adams v. State*, 725

S.W.2d 446, 447 (Tex.App.—Houston [1st Dist.] 1987, no pet.).

We overrule point of error one.

### Point of Error Two

■ In point of error two, appellants argue that the Act violates the equal protection clauses of the Texas and United States Constitutions.

The Texas Constitution provides that "[a]ll free men.. have equal rights and no man, or set of men, is entitled to exclusive separate public emoluments, or privileges, but in consideration of public services." TEX. CONST. art. I, § 3. The United States Constitution guarantees "equal protection of the laws." U.S. CONST. amend. XIV, § 1. Appellants argue the Act creates separate classes of peace officers that are treated differently under the law.

■ The Texas equal protection provision traditionally corresponds to the federal provision. *Rose v. Doctors Hosp.*, 801 S.W.2d 841, 845 (Tex.1990). Because appellants do not argue or cite authority to establish their protection is greater under the state constitution, their arguments will be addressed under the United States Constitution. *Arnold v. State*, 873 S.W.2d 27, 33 (Tex.Crim. App.1993); *Smith v. Board of Regents of Univ. of Houston*, 874 S.W.2d 706, 712 (Tex. App.—Houston [1st Dist.] 1994, writ denied).

■ If a statute impinges on a fundamental right or suspect class, then the statutory classification requires strict scrutiny. *Smith v. State*, 866 S.W.2d 760, 764 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). If no fundamental right or suspect class is involved, the test is whether the classification is rationally related to a legitimate state objective. *Id.* at 764; *Martinez v. Harris County*, 808 S.W.2d 257, 260 (Tex.App.— Houston [1st Dist.] 1991, writ denied). The judiciary is not in a position to substitute its own policy views for those of legislature.

---

12. TEX.REV.CIV. STAT. ANN. art. 4413 (29aa) (Vernon Supp.1995).

13. In relevant part, the caption of S.B. 768 provides:

AN ACT amending the Private Detectives, Private Investigators, Private Patrolmen, Private Guards, and Managers Act, Chapter 610, Acts of the 61st Legislature, Regular Session, 169, (Article 4413(29bb) Vernon's Annotated Civil Statutes); and declaring emergency.

Appellants do not contend that they are members of a suspect class or that a fundamental right is affected. Therefore, we need only determine if the challenged provision is rationally related to a legitimate state interest. *Rose,* 801 S.W.2d at 845.

One purpose for regulating the private security industry is to protect the public from unqualified or inexperienced officers. Because commissioned private security guards are allowed to carry firearms and often interact with the public, a desire to protect the public is clearly a legitimate state interest.

■ Addressing the question of means, we must determine if the statutory method of protecting the public safety is rational. We need not review each and every reason that a provision is thought to be rational; we need only find one rational reason. *See Texas Bd. of Private Investigators v. Bexar County Sheriff's Reserve,* 589 S.W.2d 135, 136–37 (Tex.App.—San Antonio 1979, no writ).

In *Texas Board of Private Investigators,* the court of appeals addressed an almost identical equal protection challenge to section 3(a)(3) of the Act. *Id.* at 136. The challengers were reserve peace officers who were not excluded from coverage of 3(a)(3). As the court pointed out, the Act is clearly intended to protect the public from persons who are allowed to carry firearms in public areas. *Id.* Thus, it is rational for the legislature to implement that intention by excluding from regulation only those persons who were adequately trained and supervised.

Technically, appellants in this case are not reserve peace officers, but the same rationale applies. Testimony before the trial court indicated that, in general, part-time peace officers were less experienced and less trained than full-time officers. Appellants argue that, as certified peace officers, they are subject to higher training standards under the TCLEOSE Statute than the Act requires of the private security officers it licenses and regulates. However, appellants were primarily volunteers who devoted much less time to the practice of law enforcement

than full-time employed peace officers. The trial court heard testimony that many small communities—particularly in and around Harris County—commission peace officers who work a limited number of hours per month for the community, with little or no pay, and who utilize their commission to make careers of "extra jobs" in private security. In private security, these officers operate with little experience and supervision, and with no bonding or insurance for the public's protection.

Appellants contend there is "no compelling public purpose" and "no substantial reason" for the statutory classification. Absent a fundamental interest or suspect class, we are not required to find a "compelling" purpose or a "substantial" reason. Appellants also argue that unequal treatment will jeopardize their employment opportunities, resulting in lower wages. These arguments are legitimate, but are best addressed to the legislature. We are not in a position to weigh the effects of legislation when assessing an equal protection challenge.

The distinctions between part-time and full-time peace officers form a rational basis for including part-time peace officers under the Act.

We overrule point of error two.

### Point of Error Three

■ In point of error three, appellants allege the Act violates the due course of law clause of the Texas Constitution by imposing criminal penalties for obtaining employment.[14]

The Texas due process guarantee traditionally has been construed to correspond to that found in our federal constitution. *Sax v. Votteler,* 648 S.W.2d 661, 664 (Tex.1983); *Lindsay v. Papageorgiou,* 751 S.W.2d 544, 550 (Tex.App.—Houston [1st Dist.] 1988, writ denied). The Supreme Court of Texas recently indicated that the due course of law provision has "independent vitality." *In re*

---

**14.** The Texas Due Course of Law provision provides:

No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or

in any manner disfranchised, except by due course of the law of the land.

Tex. Const. art. I, § 19.

*J.W.T.,* 872 S.W.2d 189, 197 (Tex.1994). However, appellants cite no case law requiring a more expansive interpretation than that which the federal constitution provides. Without further guidance in this particular area of application, we decline to extend greater protections than those traditionally provided. *See id.* at 197.

Appellants' claim is essentially one of substantive due process: the right to seek and obtain employment. Our standard of review for such a challenge is whether the statute has a reasonable relation to a proper legislative objective without being arbitrary or discriminatory. *Cannon v. Lemon,* 843 S.W.2d 178, 183 (Tex.App.—Houston [14th Dist.] 1992, writ denied). Therefore, as with an equal protection challenge, we must first determine the purpose of the statute to assess whether the means chosen to obtain that end are rational and not arbitrary.

It is clear from a review of the Act that the legislature's objective was to ensure that security officers have adequate training, certification, and experience in order to protect the public safety and welfare. The exclusion of "full-time" employed peace officers from the Act's coverage is not an irrational means to protect public safety. While it may be debatable whether full-time peace officers are in fact in a better position to protect the public, it is not irrational to believe they might be. Full-time peace officers are at least more likely to possess greater levels of training and experience than part-time peace officers working on a volunteer basis. Thus, it is not irrational to indulge full-time officers a presumption of adequate training without requiring them to satisfy the provisions of the Act. Therefore, it is rational for the legislature to conclude that, as a class, less than full-time employed peace officers should not receive a presumption of qualifications exempting them from the provisions of the Act.

Appellants beg the question when they flatly assert that "imposition of criminal penalties for the non-criminal offense of seeking and obtaining extra employment" violates due course of law. There is no fundamental right to employment that is not subject to regulation or criminalization by the legislature if due process guarantees are satisfied. Appellants simply assume that employment itself is a due process right that can never be made criminal. The prerequisites for employment in any particular industry or position can be, and often are, governed by policy choices made by the legislature to protect the public interest. At most, appellants have made a strong case that the Act's employment distinction is perhaps not the best way to address the concern for public safety. However, appellants have not demonstrated that the distinction between full-time and part-time peace officers is not a rational means for obtaining a legislative end, as required for a due course of law challenge.

Appellants also argue that no public interest is being served by the Act. Constable Victor Trevino of Harris County Precinct Six testified that the statute provided "no real value" and had "no common sense." Representative Yolanda Navarro Flores of the Texas House of Representatives stated that the statute had "absolutely no benefit." We are not in a position to access the validity of a statute based upon individual opinion as to the benefits of legislation. Such an inquiry addresses only the efficacy of legislation and has no relevance to appellants' due course of law challenge.

We overrule point of error three.

### Point of Error Four

In point of error four, appellants argue the Act is unconstitutionally vague and overbroad. However, they cite no authority to support this contention. Incorporating previous authorities by reference, when those authorities do not address the issues of vagueness and overbreadth, presents no authority for us to review. Tex.R.App. P. 74(f)(2); *McWherter v. State,* 607 S.W.2d 531, 536 (Tex.Crim.App.1980); *see Williams v, State,* 848 S.W.2d 777 (Tex.App.—Houston [14th Dist.] 1993, no pet.) (holding that conclusory point of error, which cites no authority directly in support of argument, presents nothing for review.)

We overrule point of error four on the grounds that nothing is presented for our review.

On the merits, appellants argue that the Act is both vague and overbroad because prosecutors have too much discretion. This is because violations of the Act are discovered only by the use of informants or through investigation. Appellants also contend that the lack of written definitions or guidelines for the words "full-time employment" allows for inconsistent statutory interpretation.

We begin with the presumption that the statute under attack is valid. *Ex parte Benavides*, 801 S.W.2d 535, 537 (Tex.App.—Houston [1st Dist.] 1990, orig. proceeding). Addressing the issue of overbreadth first, we must determine if the statute reaches a substantial amount of constitutionally protected conduct. *Bynum v. State*, 767 S.W.2d 769, 772 (Tex.Crim.App.1989).

A statute is unconstitutionally overbroad if "it sweeps within its coverage speech or conduct which is protected by the First Amendment." *Id.* at 772 (citing *Clark v. State*, 665 S.W.2d 476 (Tex.Crim.App. 1984)). Appellants also allege no "speech or conduct" violation of the First Amendment right, but contend only that "one cannot readily ascertain who is a full-time employed officer and who is not." This argument relates to the issue of vagueness and the possibility of arbitrary and discriminatory enforcement. Because appellants present no argument or authority relevant to overbreadth, we address it no further.

When assessing a statutory challenge based on vagueness, we must examine facially if First Amendment rights are involved. *Clark*, 665 S.W.2d at 482. However, where no First Amendment rights are implicated, we need only examine the statute as it is applied to the challenging party. *Bynum*, 767 S.W.2d at 774. Thus, it is incumbent upon appellants to demonstrate that the Act is unconstitutional as applied to their conduct.

Appellants' primary argument is that the phrase "full-time employment" in section 3(a)(3) of the Act is not statutorily defined, and is therefore ambiguous. However, appellants must demonstrate that this is sufficient vagueness to lead them to reasonably believe that they were covered by the statutory exceptions in section 3(a)(3). *Bragg v. State*, 740 S.W.2d 574, 576 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

There is no constitutional requirement that a statute define the words or terms used. *Engelking v. State*, 750 S.W.2d 213, 215 (Tex.Crim.App.1988). When words are not statutorily defined, we must interpret them by the rules of grammar and common usage. *Bynum*, 767 S.W.2d at 774.

Webster's New Collegiate Dictionary defines the adjective "full-time" as 1) employed for or working for the amount of time considered customary or standard, 2) involving or operating the amount of time considered customary or standard. WEBSTER'S NEW COLLEGIATE DICTIONARY 461 (1973). When qualifying the word "employment," we believe the common usage of the phrase relates to approximately 40 hours of work per week. We realize there will be close cases, which may be difficult to judge, but what is "customary" must be assessed with the context of common usage.

Appellant worked substantially less than 40 hours per week. Appellant Rodriguez logged the most hours, working anywhere from 15 to 30 hours per week on a volunteer basis. This Court has held that a peace officer working for only four eight-hour shifts a month for $50 could not reasonably have thought that section 3(a)(3) exempted him from the licensing requirements of the Act. *Bragg*, 740 S.W.2d at 577; *see also Massachusetts Indem. & Life v. Texas State Bd. of Ins.*, 685 S.W.2d 104, 115 (Tex.App.—Austin 1985, no writ) (working only four hours a week violates insurance statute requiring "full-time" agent of appointment). We cannot conclude that unpaid volunteers working from a minimum of 10 hours per month to 30 hours per week are to be considered "full-time employed" as that phrase is commonly understood.

We reject appellants' challenge to the Act on the grounds of vagueness because applying the term "full-time employment as a peace officer" to their conduct, they could not have reasonably thought they were within the exception provision.

We overrule point of error four.

The judgment is affirmed.